Robertson, J.
—This action was tried at special term by the court, without a jury, and the appeal from the judg *375 ment has been argued upon exceptions filed to decisions of facts and conclusions of law contained in the finding of the judge before whom the same was tried. •
Two causes of action for freight, are united in the complaint—one for transporting and delivering coal to the defendant—and the other for transporting coal which the defendant converted to his own use, while the lien of the plaintiffs’ assignors for the freight remained. A third cause of action was also set out, and was for demurrage for a detention by the defendant, of the vessel in which such coal was transported. The plaintiff claims, as assignee of the owner and master of the boat in which such coal was carried.
The answer, besides denying the principal allegations in the complaint, sets np a counter-claim for goods mentioned in the bill of lading, (under which the defendants received the goods alleged in the complaint to have been delivered to him,) not delivered to the defendant.
Upon the production of the bill of lading under which the goods were transported for which freight is claimed, the body of it contained no statement of the nature, of the merchandize, except by requiring a certain sum to be paid for freight of each ton of “ said coal.” It had, however, a memorandum upon its margin, as follows: “ Lump coal, broken—78 egg—100 stove, Chestnut; 178 tons, of 2,240 lbs., Tunnel Vein Red Ash coal.” On the voyage for which such bill of lading was given, the boat had on board only 78 tons of stove coal, and 100 tons of egg coal. The rate of demurrage specified therein, was ten dollars a day after three days. The coal specified in the bill of lading, was sold to the defendant, and the bill assigned to him while the coal was in transitu.
On the arrival of the boat, ten tons of egg coal were delivered to the defendant before any discovery was made of a deficiency of stove coal. Upon demanding coal of the quantity and kind described in the bill of lading, he received more egg coal, enough to make 76| tons in all, and a little, over 49§ tons of stove coal, when the master refused to *376 deliver any more stove coal, unless the defendant would take all the egg coal on board, amounting to 23| tons ; the defendant refused to do so, but demanded the rest of the stove coal on board, amounting to nearly 28| tons, and offered to receive a ton and three-quarters of egg coal so as to make the complement of seventy-eight tons, and generally demanded enough of each kind to make up the amount specified in the bill of lading. The master, however, refused to make any further delivery of the coal unless the defendant would take all the coal in the boat, which the latter refused.
The whole of the coal to which the defendant was entitled, could have been received during three days after the arrival of the vessel in New York, and the latter was not detained from any want of readiness of the defendant to receive such coal.
The master of the boat demanded freight for 178 tons of coal, which the defendant refused, offering to pay freight for what he had received, deducting the value of that which he had not received.
After the delivery of the coal, the master of the boat recovered a judgment against the defendant, in the Marine Court of the city of New York, for the freight of 178 .tons of coal, and levied on the coal remaining in the boat, which the officer, having the execution, removed to a coal-yard for storage. The keeper of such yard, subsequently sold the coal for storage, after advertising the same and giving notice to the attorney, by whom the judgment was recovered. Other property which the defendant owned, being in his actual possession, was levied upon at the same time by the same officer, but the judgment was reversed on appeal, and the property levied upon ordered to be restored to the •defendant, which was done.
The foregoing facts appear in the finding of the judge, and are fully sustained by the evidence. There are some matters which seem to be material in some aspects of the case, not passed upon; thus, no demand of the amount due for demurrage, was proved or found, nor was the difference *377 between egg and stove coal pointed out in the evidence, although they are universally spoken of by witnesses as different articles of merchandize, while the latter is both proved and found to have been more valuable than the former. Still less was any inquiry made as to whether the difference is perceptible on bare handling or inspection; or whether the quantity of each in the boat could have been discovered before the defendant took out any qf the coal, received by him. The defendant is not proved to have known that the coal bought by him from the owner of the coal-yard where it was stored, was any part of the cargo. There was no occasion for him to have made inquiries leading to such result; and he remains, as to such coal, a bona fide purchaser for value, without notice.
Judgment was rendered in favor of the plaintiff in this action, for the difference between the freight on the quantity of coal received by the defendant from the vessel, and the value of the coal not delivered to him according to the bill of lading.
The finding of the judge, as to the following matters, was excepted to by the plaintiff, as containing erroneous decisions of fact and conclusions of law, to wit: the want of a delivery of the quantity of coal according to the bill of lading; a failure of any delivery, under the bill of lading, beyond 125 tons; the non-delivery to the defendant and non-acceptance by him, of the coal remaining on board ; the non-detainer of the boat beyond the time allowed. Exceptions were also taken to the following supposed conclusions of law of 'the court, to wit: the absence of any obligation on the defendant’s part, to accept the coal left by him on board, as the coal to which he was entitled under the bill of lading; the right of the defendant to select such part of the cargo as he took away, without being bound to pay all the freight provided for in the bill of lading; the liability of the master to deliver merchandize conform-ably to the marginal description thereof in the bill of lading; the right to charge against the freight of the coal accepted by the defendant, the value of the residue of *378 the coal not delivered less the freight; the release of the coal sold for freight from any lien for freight; the exemption of the defendant from liability for freight of the coal so sold; his right to have the plaintiff’s claim reduced by the value of the coal not received by him under the bill of lading; the plaintiff’s inability to recover for more freight than on the coal received by him, or more than the amount awarded. No such conclusions of law are stated in the finding. The only one stated is, that the plaintiff is entitled to recover freight of the coal received less the' value of that not delivered. It is true, that the reverse of such conclusions was insisted upon by the plaintiff’s counsel at the trial. Thus, he contended, that the defendant, on discovering.the variance between the amount of stove coal on board and the bill of lading, was bound to elect whether he claimed it or not, and that his subsequent acts in receiving the coal, amounted to such election and a delivery and acceptance of the whole cargo, and made him liable for all the freight as well as demurrage. But this would not necessarily involve the reverse of the propositions so insisted on in the finding of the court, unless so specified. Upon such a general legal conclusion as that in this case, we can only infer that such legal propositions were adopted by the court to control its decision, as those without which no view of the evidence would justify the judgment. As the Code speaks of conclusions in. the plural, (§ 268,) it is possible the unsuccessful party may be bound, in order to prevent any mistake as to the steps of legal reasoning which the court may deem applicable to and sustainable by the evidence, and by which it may arrive at the final result, so to state them and have them passed upon as to assimulate the finding to a charge to a jury. In such case, the complaining party being furnished with the means of putting his finger on the specific error, would be bound to do so. In the case before us, the finding partakes more of the character of a demurrer to evidence; it will, therefore, be unnecessary to advert to specific exceptions, *379 except so far as they point out propositions inevitably involved in the single conclusion of the court.
Three prominent questions alone seem to be involved in this case:
1. The supposed acceptance in law, by the defendant, of the whole cargo of the vessel in question, by his receipt of part after the discovery of the variance of such cargo fro ni that described in the bill of lading.
2. The supposed acceptance, by the defendant, of the part of the cargo stored and bought by him, so as to make him liable for the freight of the whole.
3. The supposed conversion, by the, defendant, of the interest of the plaintiff’s assignor, by virtue of his lien for freight in the coal bought by the former from the coal-yard.
Upon the'jsolution of these questions, the right to demur-rage depends ; but certain preliminary and incidental questions have been raised which require to be disposed of as interfering with the main questions.
In the first place, if the stored coal was not in contemplation of law, the coal to be delivered under the bill of' lading, the defendant had a right to reduce the claim for freight by the value of the coal not so delivered. The bill of lading, with the agreement that it should so, operate, did operate to transfer the ownership of the goods, if in the vessel, to the defendant. It further operated to give him the right to elect, to accept the goods in the vessel, as a performance of the contract; and it also estopped the plaintiff from denying that he possessed the articles of merchandize as described, because by it, as a written representation of receiving and possessing them, he had enabled the consignee, on the bill of lading, to obtain value from the defendant on the faith thereof. Being thus estopped from denying that he had the articles which were the defendant’s property, and failing to deliver them to the defendant, the plaintiff’s assignor, the master of the vessel, clearly became liable for non-delivery of the articles of merchandize alleged to be shipped. Admitting that no *380 recovery could be had in an action against the owner of the vessel by the shipper, for non-delivery of the goods, because they never were shipped; nor by the assignee. of the bill of lading, because he could only claim through the shipper; yet, when that owner claims, under a contract made by the master against the assignee of such contract, the latter must, in equity, be allowed to recoup damages arising under the same contract, and assume the fact of the existence of the goods, not delivered, aboard of the vessel, by way of estoppel. The acceptance of part of the articles agreed to be delivered, will not preclude such a claim. (Burton v. Stewart, 3 Wend. 236; Van Epps v. Harrison, 5 Hill, 63.) And the case of Deming v. Kemp, (4 Sandf. 147,) is inapplicable, as there the goods were to be delivered at different times. In this case, in fact, a considerable portion of the goods were actually on board, and refused to be delivered, as to which there can be no question as to the right to recoup or set-off. There was no error in allowing the counter-claim if the goods were not delivered.
The plaintiff’s counsel has strenuously insisted, that the discrepancy between the cargo in the boat and that described in the bill of lading, was' merely as to quality; that there was the same quantity of coal in both; while the defendant contends that the error is entirely as to quantity, not one half of the stove coal being deliverable, and egg coal supplying its place. This contradiction arises from an erroneous view of the original contract; that was an agreement to deliver not merely 178 tons of a particular species of coal, but 100 tons of stove and 78 tons of egg coal, being two parcels of two different kinds. There cannot be a doubt that where the kind becomes the subject of a specification, coal of that kind must be delivered. I have already alluded to the fact, that these two are recognized as different articles of commerce of different value; the fact that they are generally the same, is immaterial. The cases cited on the argument in which goods of inferior quality merely, or in a bad condition, were delivered, are inapplicable. If the plaintiff’s views be correct,- a tender *381 of an entire cargo of egg coal would have been sufficient, although a different article and of inferior value. If the bill of lading had. in such case, specified stove coal only, and the defendant had accepted ten tons of the cargo knowingly, he might have been liable for the whole freight in consequence of taking away part of that on which the master had a lien for freight. As the bill of lading called for egg coal, the defendant was only bound to take so much of it out of the cargo as was specified in such bill.
I do not see that the doctrine involved, that an assignment of the bill of lading is a transfer of the merchandize represented by it, Zachrisson v. Ahman, (2 Sandf. S. C. R. 68 ;) Hargous v. Stone, (1 Seld. 73,) has any bearing upon the defendant’s liability; it could not in any case deprive the defendant of his right to repudiate the goods on their arrival, as not corresponding in kind with those sold, or described in the bill of lading. For some purposes, the delivery of the bill of lading is a delivery of the possession, such as insuring and the like, but clearly could not deprive the vendee of the right of rejecting the goods as not being those bought; and he would not be responsible for freight unless he actually received the merchandize.
The judgment in the Marine Court was not conclusive, or even evidence, that the coal stored was delivered to the defendant. It was reversed, -and the levy was an act of the plaintiff. The order of that court to restore property levied upon, was fully satisfied by the actual restitution of other property levied upon under it, and could not put the coal in possession of any one who did not hold it before. This finishes the collateral considerations bearing upon any of the facts in this case.
The nature of the original contract by the bill of lading, determines the first question as to the acceptance of the whole cargo, by the delivery of the coal after the discovery of the error. The defendant was willing to receive all the stove coal on board, which even then would not fulfill the terms of the bill of lading. 'He was also willing, and continued to receive as much egg coal as was necessary, in *382 satisfaction of that part of the contract. The plaintiffs counsel not only conceded that a contract as to quantity was divisible, but furnished two excellent authorities for the position, Kitchie v. Atkinson, (10 East. 295, 310 ;) (Addison on Cont. 484.) Acceptance of as much egg coal as the contract specified, and acceptance of as much stove coal as the master could furnish, would not compel the defendant to accept egg coal in place of stove coal, from which it differed in value and kind. If the defendant had repudiated the contract, so far as the master of the boat in question could carry it out after receiving any coal, he might lose all recourse against his vendor for the part actually in the boat. The defendant is, therefore, not responsible for the .coal which he did not buy, or that which he did not receive, and was not bound to tender back the part which corresponded with the bill of lading, and he had received, in order to recover damages for the non-s delivery.
It will not be necessary to discuss át length the second question, whether the delivery of the goods on the sale of them for storage, constituted a delivery under the bill of lading; they were not tendered as such, and were bought in entire ignorance of any claim for. freight. It would be very doubtful whether a seizure of them by the defendant, knowingly, without the consent of the plaintiff’s assignor, could be converted into a delivery. . A sale by a storekeeper, under a different .claim of right adversely to the plaintiff, can hardly be so designated..
The remaining question is one, perhaps, not entirely without difficulty, to wit: the effect of the sale of the. coal to the defendant, by the keeper of the yard in which it was stored, of the delivery of it to him by the officer; and whether the plaintiff’s assignor had parted with all lien thereby. In the case of Jacobs, assignee, &c., v. Latour & Messer, (2 Moore & P. 20,) it was held, that the defendant Messer, had waived a lien which he had on certain horses of the defendant Latour, in his possession, before an act of bankruptcy, by levying upon and selling them after such *383 act. Ch. J. Best held, “ that the equitable right of lien does not extend to a case where the right of third parties intervene it having been previously established in the case of Price v. Helyear, (1 M. & P. 541, S. C. 4 Bing. 597,) that a sheriff was liable for seizing and selling goods under an execution after an act of bankruptcy. In the case before us, the goods were surrendered to the constable to be levied upon and sold. The possession was parted with, and a sale upon such execution would have cut off the lien, if any, of the plaintiff’s assignor; and although, in the case cited, the lien was prior to the act of bankruptcy, yet the party levying was not remitted to his original rights. It is true, the judgment in this case was reversed, and the levy discharged, but the possession-was parted with by the master of the vessel with intent to deliver the property to the defendant, or subject it to an execution against him, and the former never resumed possession of it; the ownership remained with the shipper of the goods, who could have reclaimed them without discharging any lien for freight. The delivery to the yard-keeper, if.it did not enure to the benefit of the defendant, did to that of the owner of the coal, and it was at his risk while stored. In Sweet v. Pym, (1 East. 4,) upon the delivery of goods to a carrier to be conveyed at the risk of a principal, although he was unknown to the carrier, it was held that such goods could not be reclaimed under a bill of lading, by the carrier, in favor of the person forwarding, and the rule must be the same in favor of all bailees; that a deposit by a third person with them for the benefit of a principal, is final. There can be no doubt that the master of the vessel intended to abandon any lien for his freight, and look to the personal responsibility, either of the defendant or the owner of the coal; that he parted with the possession of the coal with such intent, and never intended to reclaim it in order to protect his lien. The keeper of the coal-yard acquired a new lien, that of storage, paramount to that for freight. This was strong evidence of an intent of the master to abandon his claim, and once abandoned, it could *384 not be resumed; it would be monstrous if the master of a vessel depositing goods on storage and omitting to pay for it, could entrap an innocent purchaser on a sale for such storage, into a liability for freight for which he claimed a secret lien on such goods. Besides this, the goods were delivered as the property of the defendant, to the yard owner, by the constable who levied on them under authority of the plaintiff’s assignor; and he kept and sold them as such. He surely would not be liable for the freight under a secret lien, or for disposing of them after giving notice to the defendant, whom alone he knew as owner. No one could suppose that any one who attempted to apply the proceeds of property in his possession to the payment of another’s debt, meant to reserve a lien upon such property for his own benefit. If the yard owner was not liable, the defendant claiming under him, could not be, for if he were., the former would be liable over on an implied warranty of title. Upon the whole, therefore, I have come to the conclusion, although not without much hesitation, that the plaintiff’s claim for freight for the coal stored, must be rejected.
There being, therefore, no error in the conclusion of law in the 'decision at special term, the judgment must be affirmed with costs.
Woodruff and Moncrief, J. J., concurred in affirming the judgment.
Judgment affirmed.