DETERMINED IN THE

# FIRST DEPARTMENT,

AT

# GENERAL TERM,

## May, 1881.

LESTER B. MILLER AND MERRITT B. MILLER, APPEL-
LANTS *v.* THE HANNIBAL AND ST. JOSEPH RAILROAD
COMPANY, RESPONDENT.

*Bill of lading — the printed portions are controlled by the written parts — when the
carrier is estopped from denying the receipt of the articles specified in it.*

In November, 1878, the firm of E. W. Peck & Co. delivered to the defendant, at
Kansas City, fifty-five barrels, and received therefor two bills of lading, partly
printed and partly written. The printed portion acknowledged the receipt,
in apparent good order (contents and value unknown) of the packages, con-
signed as marked and numbered in the margin, and in the margin was written,
by the defendant's agent, besides the address and marks, in one the words
"articles, thirty barrels eggs," and in the other "articles, twenty-five barrels
eggs." In fact the barrels contained nothing but sawdust.
The bills of lading, indorsed in due form by E. W. Peck & Co., and accompanied
by drafts drawn upon the plaintiffs, were sent to the latter, who relying thereon,
accepted and paid the drafts. Thereafter, upon discovering that the barrels
contained nothing but sawdust, they brought this action to recover from the
defendant the amount so paid.
*Held,* That the printed portions of the bills of lading were controlled by the
written parts thereof, and that, as so construed, the words "contents and value
unknown," meant simply that the condition or kind, and quality and value of
the eggs were unknown.
That as against a *bona fide* indorsee of the bills of lading the defendant was
estopped from denying that the barrels contained eggs, and that the plaintiffs
were entitled to recover.

APPEAL from an order sustaining a demurrer interposed to the complaint, and from a judgment entered thereon.

*Douglas Campbell*, for the appellants.

*Elihu Root*, for the respondent.

DAVIS, P. J. :

The defendants by their lawfully authorized agent, in November, 1878, received at Kansas City, Missouri, from some person doing business in the name of E. W. Peck & Co., fifty-five barrels containing nothing but sawdust, and thereupon delivered to such person two bills of lading. The portions of the first bill, material to the question in this case, are as follows :

KANSAS CITY, Mo., Nov. 1, 1878.

Received of E. W. Peck & Co. Consigned to order E. W. Peck & Co., New York.

The following described packages, in apparent good order (contents and value unknown), consigned as marked and numbered in the margin, to be transported over the line of this road to the company's freight station at            , and delivered in like good order to the consignee or owner.

\*       \*       \*       \*       \*       \*       \*       \*

This receipt to be presented without alteration or erasure.

| Marks and Consignee. | Articles. | Said to Weigh. |
| --- | --- | --- |
| Order E. W. Peck & Co., New York. | 30 bbls. Eggs. O. R. F. | |
| c\|. Star Union Line, Chicago. | E. W. P. & Co., N. Y. | |

The portions of the second, pertaining to the question, were in like form in all respects except the part in writing, which is as follows :

| Marks and Consignee. | Articles. | Said to Weigh. |
| --- | --- | --- |
| [A] | 25 bbls. Eggs. | 4, 500. |
| Order E. W. Peck & Co., New York. | | |
| c\|. Star Union Line, Chicago. | | |

The words describing the articles as thirty barrels of eggs and twenty-five barrels of eggs, in the bills respectively, were written in by the agent of the defendants. All the residue of the bills, except the names of the shippers and consignees, were printed blank forms. These bills of lading were each indorsed in due form by E. W. Peck & Company, and were annexed to drafts purporting to be drawn by E. W. Peck & Company on the plaintiffs in the city of New York, which drafts were delivered to the Bank of Kansas City for collection; and the plaintiffs were notified that the fifty-five barrels of eggs had been shipped by the defendants to the plaintiffs, and that E. W. Peck & Company had drawn against them for the sum of $495. The plaintiffs in due time received the bills of lading, and relying thereon, accepted and paid the drafts. Shortly after payment of the drafts the fifty-five barrels of sawdust arrived in New York, and the plaintiffs discovered that they did not contain eggs and refused to receive the same. The fifty-five barrels of sawdust were of no value above the freight charges thereon, but that number of barrels of eggs would have been at that time, inclusive of all freight charges, of greater value than the sum paid by the plaintiffs upon the drafts.

There is no allegation of fraud on the part of the defendants, and there is no question but that they transported and offered to deliver the same packages and contents which they, in fact, received; nor is there any question but that the plaintiffs as assignees of the bills of lading received the same and paid the drafts in entire good faith relying upon such bills.

The question presented by the case is whether the defendants are liable for the damages sustained by the plaintiffs by their acceptance and payment of the draft. It is claimed by the defendants that the words " contents and value unknown," printed in the body of the bill, countervail the written receipts for thirty and twenty-five barrels of eggs, or have the effect to reduce those words to a mere declaration that it had received thirty and twenty-five barrels said to contain eggs.

We have not been able to find in the books a case similar to this in its facts. Most of the cases arise upon the question of the weight or quantity of the articles delivered differing from that stated in the bill of lading; or upon the condition, at the time of the delivery, of the articles contained in the packages received. (*Jessel* v. *Bath*,

2 L. R. Exch., 267; *In re The Columbo*, 3 Blatch., 521; *Shepherd* v. *Naylor*, 5 Gray, 591; *West* v. *Steamboat Berlin*, 3 Clark, 532; *Clark* v. *Barnwell*, 12 How. [U. S.], 272; *Barrett* v. *Rogers*, 7 Mass., 299; *Grant* v. *Norway*, 10 C. B., 665; *Meyer* v. *Peck*, 28 N. Y., 598; *Sears* v. *Wingate*, 3 Allen, 103; *Byrne* v. *Weeks*, 7 Bosw., 372.) Under these authorities, as we understand them, the defendants would not be liable if they had delivered the number of barrels called for containing eggs, because of any ill condition in which the eggs might be found, unless it could be shown that such condition was caused by the defendants' negligence or fraud. But in this case the complaint avers that the defendants received no eggs, but simply a number of barrels containing nothing but sawdust, and on thus receiving the barrels of sawdust the defendants issued bills of lading with a written acknowledgment that they had received so many barrels of eggs. That part of the bill of lading was in writing. According to the authorities in this state, the written portions of such an instrument must control, where they are repugnant to the printed portions. (*Leeds* v. *Mechanics' Ins. Co.*, 8 N. Y., 351; *Harper* v. *Albany Ins. Co.*, 17 N. Y., 198.) The printed words, therefore, "contents and value unknown," as contained in these bills of lading, when read in connection with the written receipt, must be held simply to mean that the condition or kind and quality and value of the eggs were unknown to the defendants.

But we think that as between a *bona fide* indorsee of a bill of lading who has advanced his money relying upon it, the written portion of the receipt should prevail and the party issuing it must be held liable for the injury sustained by its falsity. It was said by DENIO, C. J., in *Meyer* v. *Peck* (*supra*): "There is, no doubt, an established distinction in favor of a *bona fide* indorsee, grounded upon the doctrine of estoppel. By signing the bill of lading acknowledging the receipt of a given quantity of merchandise, the master has enabled his shipper to go into market and obtain money on the credit of the shipment, and cannot be permitted, as against a person so advancing, to set up his own or the master's want of care at the expense of the endorsee. This results from the qualified negotiability of these instruments." (See *Dows* v. *Perrin*, 16 N. Y., 325; *Bates* v. *Todd*, 1 Moo. & Rob., 106; *Berkley* v. *Watling*, 7 Ad. & El., 29.)

The case in which these remarks were made was held not to be within the rule thus laid down, but we do not see why the principle thus announced by the learned chief justice is not a sound one. In this case it is apparent that the *bona fide* consignees of the bills of lading, who have relied upon the act of the defendants and advanced their money upon the drafts, must suffer for the fraud of the shipper, or that the loss must fall upon the defendants, whose act enables the shipper to commit the fraud. It was clearly in the power of the defendants to protect themselves by receiving the barrels in such form as would not have misled or deceived the plaintiff. But in this case the written portion of the receipt indicates knowledge on the part of the receiver. The plaintiffs had a right to assume that the barrels were known by the defendants to contain eggs of some sort, and were not merely fraudulent packages of sawdust. To hold otherwise seems to us to be opening the widest possible door for frauds of this character. The only mode in which assignees of bills of lading, or *bona fide* acceptors of drafts based upon such bills, can protect themselves, would be to refuse acceptance and payment until after the actual arrival and examination of the goods. Until then they can have no opportunity for self-protection. But such a rule would be seriously injurious to the vast amount of traffic now conducted upon such instruments. The carrier, on the other hand, has an ample opportunity, either by inspection of the articles, to know whether or not a deception is being practiced, or to protect himself and prevent the consignee from being misled, by the form of the bill of lading he issues. If he chooses to issue receipts for barrels or packages containing specified articles, it is not enough to deliver to a *bona fide* consignee, who has advanced money on the faith of the bill of lading, packages containing articles altogether different and of no value.

We think the judgment should be reversed and the demurrer overruled, with leave to answer over in twenty days, on payment of costs of the appeal and of the demurrer.

Brady and Daniels, JJ., concurred.

Judgment reversed, demurrer overruled, with leave to answer over in twenty days, on payment of costs of appeal and of demurrer.