HARPER and others *v.* THE ALBANY MUTUAL INSURANCE COMPANY.

The use of camphene for cleaning type, a purpose customary among printers, is not a violation of a fire policy upon the printing and book materials and stock in a building "privileged for a printing office, bindery and bookstore" the printed conditions of the policy describing booksellers' stocks as extra hazardous, subjecting camphene on sale and printers of books to special rates, and prohibiting the use of camphene, spirit gas or burning fluid without permission to be indorsed on the policy.

It seems that the prohibition of camphene in such case relates only to its use as a lighting material.

In the construction of a policy of insurance the written part is to prevail over the printed.

Evidence is inadmissible of a verbal agreement at the time of issuing the policy that the insured might use camphene as a lighting material, and that a portion of the premium paid was for that privilege, the sum indorsed being sufficiently large to cover the extra premium charged for such use, but there being no written evidence that the increased premium was paid for that hazard. ( *Lamott* v. *Hudson River Fire Ins. Co., in note.*)

APPEAL from the Supreme Court. The action was upon a policy of insurance against damage by fire, issued by the defendant, upon the plaintiffs' printing and book materials, stock, paper and stereotype plates and printed books, contained in certain buildings in the city of New-York, therein

Harper *v.* The Albany Mutual Insurance Company.

described, "and privileged *for a printing office, bindery and bookstore,* also for a *steam-boiler* in the yard."

The policy contained provisions that "if the premises should at any time be altered, appropriated, applied or used to or for the purpose of carrying on or exercising therein any other trade, business or vocation denominated hazardous or extra hazardous, or specified in the memorandum of special rates in the proposals or conditions annexed to the policy, or for the purpose of storing or keeping therein any of the like hazardous goods, wares or merchandise, unless as therein specially provided for or thereafter agreed to by the company, otherwise to be added or indorsed upon the policy in writing, then and from thenceforth, so long as the same should be so appropriated, applied or used, the policy should cease and be of no force or effect."

In the conditions annexed to the policy, in the class of goods specified as hazardous, were spiritous liquors, and in the class specified as extra hazardous were spirits of turpentine and stocks of booksellers. Under the head of special rates were classed bookbinders, camphene on sale, printers of books and job printers. Under this head was also this provision: "Camphene, spirit gas or burning fluid cannot be used in the building where insurance is effected, unless permission for such use be indorsed in writing upon the policy, and is then to be charged an extra premium." The policy was a printed blank, filled up in the usual form, and the above provisions were contained in the printed part of the policy.

The trial was at the New-York circuit, before Mr. Justice ROOSEVELT and a jury. The plaintiffs proved a loss by fire exceeding the amount of insurance; and it appeared, by the evidence on their part, that the fire was occasioned by the act of a plumber engaged in making some repairs, who accidentally threw a lighted match or paper into a pan containing a small quantity of camphene, used for the purpose of cleaning the rollers employed by the plaintiffs in inking their forms of type, wood-cuts, &c.

It also appeared that the plaintiffs carried on an extensive book printing establishment, and that they used camphene for cleaning rollers, and for cleaning wood-cuts and electrotype plates in the course of their business of book making; and that the use of it was limited to the necessary purposes of their business as printers. It also appeared that this application of camphene was, and for many years had been, ordinary and usual among printers, and that such use was necessary and indispensable.

It was insisted, on the part of the defence, that such use of camphene was prohibited by the clause in the policy respecting the use of " camphene, spirit gas or burning fluid." The judge charged the jury, under exception by the defendant, that the policy of insurance gave the plaintiffs the privilege of carrying on the printing business, and that if they should find that camphene was a necessary and ordinary material used in the business of printing, and that it was a general custom in such establishments as the plaintiffs' to employ that material, and that the plaintiffs used it for that purpose, then there was no breach of the contract, and the plaintiffs were entitled to a verdict. The plaintiffs had a verdict, subject to the opinion of the court at general term; and the Supreme Court, at general term in the first district, having ordered judgment upon the verdict, the defendant appealed to this court.

*A. Thompson,* for the appellant.

*William M. Evarts,* for the respondents.

PRATT, J. The judgment of the Supreme Court, I think, should be affirmed.

First. The exclusion of the use of camphene in the building where insurance is effected has reference to its use in lighting the premises. This is evident, I think, from the connection in which it is found with other articles used

alone for that purpose. I know of no other use to which spirit gas and burning fluid are applicable except for the purpose of lighting buildings. And that is the ordinary and more general use to which camphene itself is applied. The three articles for lighting buildings being thus placed together in the prohibition, in connection with the consideration that such use is extremely hazardous, raises a strong presumption that its use for lighting alone was designed to be prohibited in this clause.

But, taken in connection with the other provisions of the policy, the presumption becomes conclusive. In the class of special rates we find enumerated camphene on sale, without any such special prohibition; and in the same class is found printers of books and job printers, the very articles which the policy by its terms covers. Its use for cleaning rollers is clearly no more hazardous than keeping it for sale. I am satisfied, therefore, that it was not the mere presence of the article which was designed to be prohibited by this special clause in the policy, but its common though hazardous use for lighting buildings.

Second. But if that clause should be deemed to include any and every use of camphene, it would not avoid the policy. The insurance in this case is upon the stock in trade used in the business of printers of books and bookbinders, and covers all such articles as are necessarily and ordinarily used in such business. The term "stock in trade" in a specified business, when used as matter of description in a policy of insurance, "includes, besides materials, everything necessary for carrying on that business." (1 *Phil. Ins.*, § 489.) They are just as clearly, therefore, embraced in the policy as if each article thus necessarily used was enumerated at length. (2 *Hall*, 589; *Wall* v. *Howard Ins. Co.*, 14 *Barb.*, 383, *affirmed in this court December*, 1854.) And the underwriters must be deemed to have been acquainted with the business, and with the materials ordinarily and necessarily used by the trade in prose-

cuting it. In issuing the policy they must be deemed to have intended to include all such materials in the risk. In construing the policy, therefore, it is to be treated as if the article of camphene for the use to which it was in fact applied, had been enumerated with the other articles covered by the policy. Thus considered, the rulings at the circuit were clearly right.

A policy of insurance, like any other contract, should be construed so as to give it effect rather than to make it void. The company have received a premium adequate, it is presumed, to the risk which they have taken, and hence nothing but the most stern legal necessity should constrain the court to give it a construction which would nullify it and render it a mere deception instead of the protection which the parties to it designed.

It is a well settled point that the written part of a policy shall always prevail over the printed part, in cases of repugnancy. (2 *Hall,* 622.) The printed forms are very general in their terms. The prohibitions inserted therein are more particularly applicable to the ordinary and more common policies of insurance upon non-hazardous property, for the purpose of protecting the insurers against any increased hazard in consequence of a change of business or the use of any material more hazardous than that insured against. In much the greater portion of insurances there would be no repugnancy between the written and printed part of the policy, and effect, in such cases, should undoubtedly be given to every part of the instrument. Still the substance of the contract is in the written part of the policy; and when the insurance is upon hazardous or extra hazardous goods or trades, or upon those specified in the memorandum of special rates, these printed portions are not applicable or at most only in a limited degree. Even in such case some effect may be given to these printed prohibitions. They would be held probably to prohibit a change of business from the one designated to another not designated, although

Harper *v*. The Albany Mutual Insurance Company.

the latter should be no more hazardous. In such cases they would not be entirely uselesss.

But when the insurance is directly upon the stock in trade as for example in the business of manufacturing and sale of camphene, to hold that a general printed prohibition (contained in every policy of insurance) against keeping or using it, unless permission be specially given and indorsed upon the policy, would have the effect to nullify its direct and positive stipulations, would be preposterous. Indeed, presented in this form, no one would contend for such a proposition. And still that is substantially the point presented in this case. For if I am right in the proposition that if the article was necessarily and ordinarily used in the business it is included in the term " stock " used in the policy; it is as plainly within the risks assumed by the defendants as if written in at length. Upon the whole I think the rulings at the circuit were correct and the judgment must be affirmed.*

All the judges concurring,

Judgment affirmed.

---

* In *Lamatt* v. *The Hadson River Fire Insurance Company*, decided at this term, the action being upon a policy containing precisely the same provisions in respect to the use of camphene, the following opinion was delivered, which sufficiently states the facts and question involved:

DENIO, J. The plaintiff, against the defendant's objection to its competency, gave evidence tending to show that there was an agreement between the plaintiff and the defendant's agent, cotemporaneous with the execution of the policy, that the plaintiff might use camphene as a light in the store containing the injured goods, and that a portion of the premium exacted and paid was for the privilege of such use of camphene.

I am unable to take this case out of the rule which excludes parol evidence to vary the terms of a contract in writing. If the use of camphene had simply been prohibited by the policy, the plaintiff would not have been permitted to show that the prohibition had been waived at the time of the execution of the instrument. The case is stronger in reason, though perhaps not in law, where there is found in the written contract a statement that the evidence of an

---

agreement for the use of camphene shall be in writing. The plaintiff sought to guard against the effect of an alleged verbal agreement by stipulating, in effect, that it should be of no avail. A stronger case for the application of the rule could scarcely be stated.

It is argued that the evidence of the permission to use camphene is, in fact, indorsed. There is an entry on the back of the policy as follows: "Amount insured, $2,000. Premium, $25." This amount of premium it is said, and I believe correctly, exceeds the regular premium, upon such risks as this appears to be, by sufficient to cover the price of the use of camphene. But it is not stated in the entry that the increased sum was paid for the privilege of using camphene. It may just as probably, so far as the entry is concerned, have been for some extra hazard referred to in the list of special rates. To protect the assured the indorsement must state that the amount of premium noted is for the privilege of using camphene; or it must in some manner appear in writing that such privilege had been secured to him.

I am of opinion that the judgment [which was for the plaintiff] should be reversed, and that there should be a new trial.

All the judges concurring,

Judgment reversed and new trial ordered.