By the Court—Slosson, J.
Had it clearly appeared by uncontradicted evidence that the verdict was not larger than the defendants’ proportion of the loss on the goods, fixtures, &c., actually destroyed by the fire in the corner store, I should not be disposed to disturb it. The whole question would then have turned on the correctness of the second proposition of the judge’s charge; and in respect to that, a majority of the Court hold that it is perfectly competent for a party to an instrument to waive a strict compliance with a condition of the contract in his favor, which we hold this condition to be, and'that, assuming Liddle’s testimony to have been true, and that a verbal communication of the erection of the bakery was in fact made by him to the *188 Secretary, on his application to the Company for the last renewal, and assuming that the notice thus given to that officer was notice to the Company itself, in respect to which no point was made at the trial, but it was rather conceded—the Company, by renewing the policy after such notice, waived a strict compliance with the twelfth condition of the policy, which required such information to have been made in writing, and that in any event the Company, under such circumstances, are estopped from setting-up the increased risk in bar of the action. (Ames v. The N. Y. Mer. Ins. Co., 4 Kern. R., 253; Smith v. Gugerty, 4 Barb. S. C. R., 614; McEwen v. The Montgomery Co. Mut. Ins. Co., 5 Hill R., 101; Wilson v. The Genesee Mut. Ins. Co., 4 Kern. R., 418.)
The proof, however, if not conclusive the other way, leaves it at least in doubt whether the defendants’ pro rata proportion of the loss on the goods actually destroyed in the corner store, including the cellar and loft, was not considerably less than the verdict. In other words, whether there was an amount of goods destroyed in the corner store, which, on a pro rata division of the loss between the defendants and the Hew World Insurance Company, would make the defendants’ proportion equal to the amount of the verdict.
It becomes necessary, therefore, to consider whether there was error in the first portion of the charge, which was as follows: “ That the privilege inserted in the policy, October the 3d, 1855, of connecting with the adjoining store, did not, of itself, extend the insurance over that store, nor, by the language and terms of the policy and of the renewal certificates, is the insurance necessarily extended to the stock in such adjoining store, but that the insurance was so extended, if the jury should find that such was the intention of the parties when the privilege was given and the renewals made, and that in determining that intention, the jury might consider the verbal communication made by the plaintiff, when he applied for the privilege of making the connection, the pencil indorsement-on the policy, and the fact of the resurvey made by the defendants at the plaintiff’s request.’’
The privilege of communication between the two stores, was inserted in the policy October the 3d, 1855, in these words: “The communication made with adjoining stores, does not pre *189 judice this insurance.” The verbal communication made by the plaintiff at the time he applied for this privilege, was, that he was going to separate his stock, and keep a portion of it in the new store, and occupy both stores, and the pencil indorsement on the policy, made by the Company’s then President, was, “ Connection with apartments next adjoining Fulton avenue—■ re-survey.
If, as the judge charged, and correctly, the privilege, as inserted in the policy, did not of itself extend the insurance over the goods in the adjoining store, and there was nothing in the language of the policy itself which necessarily embraced the stock in such adjoining store, then the admission of evidence of. what was said at the time the plaintiff applied for the privilege, .was the admission of parol evidence to enlarge the terms, scope and force of the written contract, and, in effect, to incorporate a new provision into it.
It is urged that the language of the policy was broad enough, to embrace both stores, as both stores in fact constituted the “ comer of ” the two streets named in the policy. The answer is, that when the policy was first executed, there was a corner store distinct from that which was subsequently connected with it, and its language must always be read in the sense in which it was then used. To admit the evidence objected to, would be to enlarge the meaning of these words, and to give to them another and different signification than that in which they were understood when employed by the parties. (Jennings v. The Chenango Co. Mutual Ins. Co., 2 Denio R., 75; Lamotte v. The Hudson River Fire Ins. Co., 17 N. Y. Rep., 199.)
There must be a new trial, costs to abide the event.
Pierbepont, J., concurred.