## COURT OF APPEALS.

THE MAYOR, &C., OF NEW YORK, respondent agt. THE EXCHANGE FIRE INSURANCE COMPANY, appellant.

The provision in the amended charter of the city of New York, imposing on the *Law Department* the duty of conducting all the law business of the corporation, was not intended to disable the city from prosecuting or defending suits *without the consent of the corporation counsel;* nor to deprive it of the ordinary right of suitors, to procure such additional professional aid as the circumstances of particular cases might require.

The city of New York being the owners in fee of the lots upon which the late Crystal Palace building was erected by the lessees from the city for a term of years, which lease having expired, and the possession of the lots and building having been surrendered to the city ; and the city thereafter procured a policy of insurance upon the building substantially corresponding with previous policies which had been issued upon the building:

*Held*, that the city had an *insurable interest in the building*, which entitled them to recover upon the policy, after the destruction of the building by fire :

*Held*, also, that the premium having been adjusted by the assurers with reference to the nature of the risk, they could not justly complain that the property was dedicated to the uses contemplated by them as well as the assured, and embraced in the descriptive terms of the policy.

*September Term*, 1867.

APPEAL from judgment of the superior court of the city of New York, affirming judgment in favor of the plaintiffs on the verdict of a jury, for $6,164.70.

The action was on a policy of insurance issued by the defendant to the plaintiffs, on the 23d of June, 1858, and covering the " *Crystal Palace* " building, which was destroyed by fire on the 5th of October following. The principal grounds of defense were, that the suit should have been brought by a different attorney ; that the corporation had no interest in the building which it paid the defendant for insuring ; and that the policy was forfeited by the continued use of the building for the purposes for which it was erected.

On the trial before Judge WOODRUFF and a jury, it appeared, among other things, that the lots on which the building was constructed, belonged to the city of New York in fee. On the 23d of March, 1852, the premises were leased for a term ending in January 1857, at a nominal rent of one dollar a year to Edward Riddle, in behalf of himself and his associates, for the purposes of the association for the exhibition of the industry of all nations, and the lease was assigned to that association, upon the completion of its organization, a few days afterwards. It appears on the face of the lease, that the inducement to its execution was the proposed erection on the vacant lots demised, of " a building of iron and glass, for the purpose of an industrial exhibition of all nations," and upon the stipulation that the lessees should make such erection, and surrender the premises at the expiration of the term, in as good state and condition as reasonable use and wear thereof would permit, damages by the elements excepted.

The building was accordingly erected, and until its destruction in 1858, it was always used for the purposes of industrial exhibitions, and for no others, except such as were incidental and appropriate to that object. This use involved the collection and operation within the building, of various kinds of machinery and other industrial agencies, and the exhibition of a great variety of articles, which would ordinarily fall in the classes of hazardous, extra hazardous, and special risks ; and the premium of insurance was fixed with reference

to the contemplated use, and the known character of the risks. On the 15th of December, 1854, this porperty, with the other effects of the Crystal Palace Association, passed into the possession of John H. White, as receiver, and on the 31st of May, 1858, the term having expired, the city took possession, and the receiver surrendered it. The title and possession of the plaintiffs are unquestioned, except by the defendant.

The purposes for which the building was always used, and the character of the articles and machinery exhibited within it, were generally known. The defendants, under their former corporate title of the Lafarge Fire Insurance Company, had repeatedly insured the building and its contents. They issued such a policy to the receiver in September, 1856, which was renewed in November, December and January. They issued another in June, 1857, which was renewed in March, 1858, and the officers of the company were informed on occasions of issuing such policies, of the fair of the American Institute being held there, as a reason for effecting the insurance.

The descriptions in these successive policies substantially corresponded with that to the plaintiffs in the policy of 23d June, 1858, and the premium of $75 on the last policy for a year's risk of $5,000, was at the same rate with the premiums previously exacted. The policy described the insurance " on the iron and glass building known as the Crystal Palace, situated on Reservoir Square, between Fortieth and Forty-second streets, and on the east side of Sixth avenue, in the city of New York, together with the furniture and fixtures now in the said building, lately owned by the association for the exhibition of the industry of all nations, and since vested in John H. White, as receiver; and also such other property lately vested in said White's hands as receiver, belonging to exhibitors, and lately in said White's custody and keeping, now remaining in said building."

The policy contained the usual printed provisions and con-

ditions of insurance. The terms of the policy corresponded substantially with that of the lease from the city to the American Institute, which was made about the same time, at a rent of $6,100 a year.

The fire occurred some three months aftewards, and the plaintiffs claimed only to recover in respect to the building, on which the loss largely exceeded the insurance.

The building was a permament structure, covering some three acres of ground, connected in all its parts, and constructed on solid and fixed foundations.

Other facts appeared, which it is not material to state. The jury found for the plaintiffs, and the judgment was affirmed at the general term, the opinion of the court being delivered by BARBOUR, J.

JOHN W. EDMONDS, *for appellants.*
DANIEL LORD *and* T. H. RODMAN, *for respondents.*

PORTER, J. There is no force in the objection that the attorneys who appear for the plaintiffs are not connected with the city law department. The provision in the amended charter, imposing on that department the duty of conducting all the law business of the corporation, was not intended to disable the city from prosecuting or defending suits without the consent of the "corporation counsel," nor to deprive it of the ordinary right of suitors, to procure such additional professional aid as the circumstances of particular cases might require.

In this case it appears affirmatively, that the action was brought with the assent of the corporation counsel, but if there had been no proof on the subject, the authority of the attorneys would be presumed.

The objection that the plaintiffs had no insurable interest, is equally unfounded. The Crystal Palace building, as well as the land on which it stood, belonged to the corporation. There is nothing in the terms of the expired lease, or in the

evidence introduced by the defendants, to give color to the claim they set up in behalf of persons known or unknown, as an excuse for refusing payment, while they retain the premium of insurance.

The judge was right in admitting proof that the defendants had insured the property for years, and knew, the purpose for which the structure was erected, the manner in which it was occupied, the general character of its contents, and the nature and extent of the risk. These extrinsic facts were appropriate, as they tended to aid the court in applying the descriptive language of the policy to the actual subject of insurance, and in giving effect to the words of the contract, in the precise sense in which they were understood and employed by the parties. (*Bidwell* agt. *Northwestern Insurance Co.* 24 *N. Y. R.* 302; *Agawam Bank* agt. *Strever*, 18 *Id.* 509; *Blossom* agt. *Griffin*, 13 *Id.* 569; *French* agt. *Carhart*, 1 *Id.* 102.)

When the policy is read in the light of the antecedent and surrounding circumstances, the import of the written language is in harmony with the manifest intention of the parties. The contract covered, and was designed to cover, the hazards incident to the occupation of the building for the purpose of exhibiting to the public the general processes and results of human skill, in each of the various departments of action and practical industry. The premium was adjusted by the insurers with reference to the nature of the risk, and they cannot justly complain that the property was dedicated to the uses contemplated by them, as well as the assured, and embraced in the descriptive terms of the policy. (*Harper* agt. *Albany Insurance Co.* 17 *N. Y.* 197; *Townsend* agt. *Northwestern Ins. Co.* 18 *Id.* 174; *Hoffman* agt. *Ætna Insurance Co.* 32 *Id.* 405.)

Other questions were raised on the argument, but we think none of them call for particular discussion. The rulings of the judge were correct, and the liability of the defendants is clear.

The judgment should be affirmed, with costs.
All the judges concurring.
Judgment accordingly.