SAMUEL PINDAR, Assignee, etc., Respondent, *v.* THE CONTINENTAL INSURANCE COMPANY, Appellant.

THE SAME, Respondent, *v.* THE RESOLUTE FIRE INSURANCE COMPANY, Appellant.

### Policy of Insurance—Classification of risks.

The terms in a policy of insurance, " *hazardous,*" *extra-hazardous, specially hazardous,* and not *hazardous,* are well-understood technical terms in the business of insurance, and refer to distinct classes or degrees of hazards. *Extra hazardous* and *specially hazardous* are not classifications of goods under the more general term " *hazardous,*" and are not to be confounded one with the other.

*H. A. Nelson* for the Respondent.

*J. Thompson* for the Appellant.

Woodruff, J.—The Court below erred in their construction of the meaning of the terms " hazardous " and " not hazardous " (in the description of the goods insured) in the body of the policy, and in holding that " hazardous," as there used, included all *kinds* of *hazardous* goods; that it was used in a *general sense,* as contradistinguished from " not hazardous," and, therefore, that there was actual permission in the very body of the policy to keep goods " extra-hazardous " and " specially hazardous."

Upon this construction the nonsuit was denied, and upon this construction the General Term ordered judgment for the Plaintiff.

This was erroneous. The terms " hazardous," " extra-hazardous," " specially hazardous," and " not hazardous " are well-understood technical terms in the business of insurance, having a distinct separate meaning. Although what goods are included in each designation may not be so known as to dispense with actual proof, the terms themselves are distinct, and known to be so ; so that an insurance upon goods " hazardous " does not in-

clude goods " extra-hazardous " or " specially hazardous," and an insurance on goods " extra-hazardous " does *not* include goods " specially hazardous." " Extra-hazardous " and " specially hazardous " are not subdivisions or classifications of goods under the more general term " hazardous," but distinct classes of goods, and no more to be confounded with, nor to be held embraced in that term, than " hazardous No. 1 " is to be held to embrace goods " hazardous No. 2," and so on. In the case before us, the policy and its schedules, which are to be read in connection therewith, classify goods with express reference to, and in conformity with, these views, and these are the only guide to the construction of a contract which is not ambiguous. Thus, they divide goods into classes :—

" Not hazardous,"—giving an enumeration or description of goods in this class.

" Hazardous, Nos. 1 and 2,"—embracing many particulars.

" Extra-hazardous, Nos. 1, 2, and 3,"—each embracing various goods of different descriptions.

" Specially hazardous,"—enumerating articles.

Now, with this specification of the declared character of the various kinds and descriptions of goods, trades, etc., the parties agree to an insurance. And what was insured ? The policy in most explicit terms answers, " goods hazardous " and " not hazardous," and, by the plainest implication, excludes all others. These terms cannot, in the ordinary technical language of insurance, include any other. And all room for inquiry or proof as to their meaning is further and more precisely excluded by the fact that the express definitions which form a part of the policy (the schedules) point out in clear terms their meaning. Both are defined in terms.

It follows that the condition in the body of the policy, by which it was declared that the policy should be void and of no force or effect if any articles, goods, or merchandise " extra-hazardous," or " specially hazardous," in the second class of hazards annexed, are kept, etc., " except as herein specially provided for," was left to its full operation,—unaffected by the fact that goods " hazardous "

and "not hazardous" were insured ; and the keeping of turpentine in the store (it being "extra-hazardous") was fatal, and forbade any recovery. The claim that Plaintiff might prove that turpentine is usually kept in a country store, and so explain or enlarge the meaning of the policy, is wholly inadmissible. The contract is specific. The Defendant had a right to make it so. Both consented to it. The case is not like those in which a trade or business is insured, which, by implication, includes all the usual incidents to the carrying it on,—*e. g.*, a printing-house, a candle-factory, or even the stock of a country store. In such cases, what usually constitutes such stock, or the materials used in the trade or factory, is open to proof. Not so here. The insurance is on goods described as "hazardous" and "not hazardous." This is made definite by the reference to the schedules and the classification therein, and cannot be changed by any such proof. If the insured wished to keep turpentine for sale, he should have obtained a special provision therefor, as he did in regard to gunpowder ("privileged to keep gunpowder"), etc.

The judgment must be reversed.

All the Judges concurring, except MASON, J.

Judgment reversed.

JOEL TIFFANY,<br>
State Reporter.