## CLINTON *vs.* THE HOPE INSURANCE COMPANY.

Where an application and survey is made, by the insured, to accompany a policy of insurance, or is referred to as forming a part of such policy, such application, survey and policy are to be construed together, as parts of one entire contract.

Three separate surveys of property had been made, prior to the issuing of the policy in suit, and were on file in the office of the company's agent; the earliest bearing date in 1860, and the latest in 1863. All of these were signed by persons other than those insured under the policy in suit. All were made under circumstances wholly different from those existing when such policy was issued, in February, 1865, and the persons insured in such policy had no knowledge, when they took the same, of any of the prior applications or surveys, although they knew the property had been insured. The agent, if he had any knowledge of the former applications and surveys, also knew they were so defective and incorrect as to make the policy sued on worthless to the insured. *Held*, that, under these circumstances, it was not to be presumed that either party entered into the contract of insurance in question in view of, or subject to, former surveys, the contents of which were either unknown to the parties, or were known to be fatal to the efficiency and validity of the policy issued.

*Held, also*, that the insured were not identified with surveys previously filed by other parties, in such a manner as to estop them from denying that the representations in such surveys were theirs, or that they were responsible therefore.

Extrinsic evidence may always be adduced to ascertain the interests intended to be insured, and a survey may be had in accordance with such proofs.

The expression, "Estate of Daniel Ross," in a policy, is indefinite, uncertain, and without any specific legal significance. But its signification may be shown by parol, or by any circumstances surrounding the case, and tending to elucidate the purpose of the parties. Parol evidence may be given to establish who were the parties really insured, and such parties may recover on the policy, though not the nominal parties thereto, or named therein.

Thus, if the evidence shows, conclusively, that such insurance was effected for the benefit of the widow, heirs at law and next of kin of the person named, they, or their assignee, may recover upon the policy.

Under an executory contract, by the widow of a deceased owner of real and personal property, and the guardian of his infant heirs, to sell such property to the plaintiff as soon as the necessary authority could be obtained from the court, for the special guardian of the infant heirs to convey, the plaintiff went into possession of the premises as tenant of the estate, at a specified rent. The property was insured by the defendant in the name of the deceased's "estate," and before any conveyance was made, the same was destroyed by fire. *Held*, that the contract was not one which could be specifically enforced by the plaintiff; nor did he acquire any legal or equitable

title to the property, or become, in any sense, the owner of it. That he had no equities, no insurable interest, nothing at risk, and, consequently, suffered no loss; but that the estate of the deceased, by such loss, acquired a right of action to recover the amount insured, up to the value of the property destroyed.

*Held, also,* that a deed of the property, subsequently executed by the special guardian appointed for that purpose, was an exception to the rule, that, on judicial sales, the deed takes effect, by relation, from a time antecedent to the date; inasmuch, as by the contract between the parties, it was not to take effect, as a contract of sale, until the deed was executed and delivered, but was, up to that time, a lease of the property. And whatever the law may be, in the absence of a contract, parties may control its operation by their contract.

When there is no valid contract for the sale of real estate, there can be no relation to one.

Where property contracted to be sold, after being insured, was destroyed by fire before any delivery or conveyance, in consequence of which the vendors weare unable to perform, and the purchaser was unwilling to perform, by taking what was left, and paying the price originally agreed upon, a and new contract was made, by which the purchaser took what was left of the property, and an assignment of the rights of action on the policy of insurance, in lieu of the real and personal property agreed to be sold; *Held,* that this was not the performance of the old, but the making and executing of a substituted contract; and that there could be no principle of subrogation applicable to the case, in the interest of the vendors.

*Held, also,* that the purchaser, as assignee of the policy, was entitled to recover the amount of the policy, provided the value of all the property destroyed equaled or exceeded the amount insured therein.

In construing a policy of insurance, the written part is to prevail over that which is printed.

If no request is made, on the trial, that a matter be submitted to the jury, as a question of fact, the objection that it was not submitted, cannot be taken on appeal.

THIS action was brought to recover on a fire insurance policy of $3000, $835 of which sum was upon the buildings and fixed machinery of a New Berlin cotton mill, and "$2165 on movable machinery therein, as per survey on file at the office of" the defendants' agent. This policy was given by the defendants to "estate of Daniel Ross," and the defendants had notice of $23,000 insurance, in all, upon the same property.

Some time before the death of Daniel Ross, he had

obtained a like insurance on the same property, and at that time a survey, referred to above, had been made out, showing the exposures of the property, and filed with the insurance agent. After the death of Daniel Ross, and on the 27th of February, 1865, the policy in suit, with others, was issued for the benefit of the widow and heirs. The issuing of the new policies in lieu of the renewal of the old policies, was the act of the agent.

On the 29th of May, 1865, a contract was made between Ross' widow and Tew, guardian, for the sale of all the insured property to the plaintiff for $23,000, as soon as a special guardian's deed could be procured through the courts, and in the meantime the plaintiff was to enter into possession of the premises and hold them as the tenant of the estate, at the rate of $1500 per annum rent, until the deed was executed and delivered. At this date Tew was the general guardian of the children and had been appointed their special guardian, but had not yet been authorized by the court to contract for the sale of the real estate. On the third of June, following, Tew was authorized to contract for the sale of the real estate for not less than $10,000, and reported that he had made a contract for that price, though no other contract than that of May 29th, appears to have been made. On the same day, (June 3d,) Tew's report was confirmed and he was directed to convey the interest of said infants to the plaintiff, " upon his complying with the terms and conditions upon which by said agreement the deed was to be delivered." These reports and orders were not filed or entered till November 3, 1865. The plaintiff went into the possession of the property insured, May 29th, but before the proceedings for the sale of the infants' interest in the real estate were perfected by the execution and delivery of the deed of the special guardian and widow, the property was destroyed by fire on the 28th day of June, 1865. On the 4th of November, 1865, the widow and the special guardian for the heirs of Ross con-

veyed the title of the real estate to the plaintiff, and at the same time assigned to him their claims for losses under this and other policies, the plaintiff paying therefor the sum of $22,000, besides rent from the 29th of May.

This action was commenced about December 1, 1865, and resulted in a verdict for the plaintiff for $3366.32. The exceptions were ordered to be heard in the first instance at the general term.

*H. L. Comstock & E. G. Lapham,* for the defendants.

*J. E. Dewey,* for the plaintiff

*By the Court,* BOARDMAN, J.   Objection by the defendants was made to the decision of the judge, holding that the application and survey of 1863, made by Daniel Ross, should not be deemed or taken to be a warranty on the part of the estate of Daniel Ross, deceased, in 1865. There can be no doubt that when an application and survey is made by the insured, to accompany a policy, or is referred to as forming a part of such policy, such application, survey and policy are to be construed together as part of one entire contract. (*Ripley* v. *Ætna Ins. Co.,* 30 *N. Y. Rep.* 136.)

In this case three separate surveys of the property in question had been made prior to the issuing of the policy in suit, and were on file in the office of the company's agent, the earliest bearing date in 1860 and the latest in 1863. All of these were signed by other persons than those insured under this policy. All were made under circumstances wholly different from those existing in February, 1865. Nor is it claimed or pretended that the parties insured under the policy of 1865 had any, even the slightest, knowledge of any of the prior applications or surveys. They knew the property had been and desired it should continue to be insured. They therefore applied

for policies upon the property in its then position, not then being in use. The agent of the insurance companies knew the mills were not running, and if he had any knowledge of the former applications and surveys he also knew they were so defective and incorrect as to make the policy worthless to the insured. Under such circumstances it would be absurd to suppose that either party entered into this contract of insurance in view of or subject to former surveys, the contents of which were either unknown to the parties or were known to be fatal to the efficiency and validity of the policy issued. In the construction of contracts courts will always bring them as near to the actual meaning of the parties as the language used and the rules of law will permit. (2 *Pars. on Cont.* 494.) The subject matter, the position of the parties and the intention and purpose of those making the contract, are often guides to its construction. The contract should be supported rather than defeated, whenever it can be done by a fair and rational construction of the language used. (2 *id.* 503, *&c. and cases cited. Hoffman* v. *Ætna Ins. Co.*, 32 *N. Y. Rep.* 405.) In the case at bar the survey is referred to in that portion of the policy which is written in and is plainly and simply the means used to identify and describe the property to be insured. This is the more apparent since the reference by its terms refers to no particular survey, though three, made at different times, of the same property, were on file at the agent's office. The printed allusions subsequently made in the body of the policy are such as are always used, even where no survey is made, and in such case that which is written shall prevail over that which is printed. (17 *N. Y. Rep.* 194.) It is quite evident that the insured made no formal application, furnished no survey of the premises, which could or ought to impair the validity of their policy. Nor are they in any way identified with surveys before that time filed by other parties, in such a manner as to estop them from denying that the representa-

tions in such surveys were theirs, or that they are responsible therefor. (*Harper* v. *Albany Ins. Co.*, 17 *N. Y. Rep.* 194. *Ames* v. *New York Union Ins. Co.*, 14 *id.* 253. *Hoffman* v. *Ætna Ins. Co.*, 32 *id.* 405. *Rapalee* v. *Stewart*, 27 *id.* 315.)

Even if these views be incorrect, it was at most a question of fact to be determined by the jury; and as there was no request that such question be so submitted, no available exception is presented for consideration. (*Barnes* v. *Perine*, 12 *N. Y. Rep.* 18.)

A further objection is taken by the defendants, that this insurance was between the defendants and the "estate of Daniel Ross;" that the "estate of Daniel Ross," means in law "Mary Ross, administratrix, &c. of Daniel Ross," &c; and that she, as such administratrix, had no insurable interest in the real estate; wherefore the recovery for loss upon the realty was excessive and unwarranted.

This position can not be maintained either by reason or authority. What has heretofore been said in regard to the principles governing the construction of contracts is equally applicable here. The intent of the parties, as expressed in the contract, and as understood by them when it was made, should control, and in all cases where the words are equivocal, or of doubtful signification, they should be construed against him who undertakes. (*Adams* v. *Warner*, 23 *Verm. Rep.* 411. *Love* v. *Pares*, 13 *East*, 80, *Bailey, J.*) It is apparent that both parties proposed and intended by the words used, to insure the building and fixed machinery, for that is done by the words of the policy. As the heirs had the chief interest in the realty, it can fairly be presumed, without the aid of extrinsic evidence, that such insurance was effected for their benefit. If, however, there was any doubt about the justness of such presumption, the evidence shows conclusively that such insurance was effected for the benefit of the widow, heirs-at-law and next of kin of the deceased. Extrinsic evidence

Clinton v. Hope Insurance Company.

may always be adduced to ascertain the interests intended to be insured, and a recovery may be had in accordance with such proofs. (*Lee* v. *Adsit*, 37 *N. Y. Rep.* 78.) The expression "estate of Daniel Ross" is indefinite, uncertain and without any specific legal significance. But its signification may be shown by parol, or by any circumstances surrounding the case and tending to elucidate the purpose of the parties. That was done in *Herkimer* v. *Rice*, (27 *N. Y. Rep.* 163,) and in *Colburn* v. *Lansing*, (46 *Barb.* 37.) It certainly cannot be contended that an insurance company may take the premiums for an insurance of real estate, and pretend to make the insurance as in this case, and then turn around and insist that it is not liable because it insured the estate of a deceased person and not his heirs. (*Springsteen* v. *Samson*, 32 *N. Y. Rep.* 703. *Hooper* v. *Hudson River Insurance Company*, 17 *id.* 424. *Bidwell* v. *Northwestern Insurance Company*, 19 *id.* 179. *S. C.* 24 *id.* 302. *Catlett* v. *Pacific Insurance Company*, 1 *Wend.* 561; *affirmed*, 4 *id.* 75.) These cases, and others which might be cited, show that parol evidence may be given to establish who were the parties really insured, and that such parties may recover on the policy, though not the nominal parties thereto, or named therein.

Again, it was objected that the property in question had been sold and transferred to the plaintiff before the loss, whereby the policy became void. By the contract of May 29, 1865, the title to this property, real and personal, was to be given to the plaintiff, so soon as the necessary authority could be obtained from the court for the special guardian of the minor heirs to convey, but it was a part of the provisions of the same contract that, until such deed was executed and delivered the plaintiff should hold such property, real and personal, as the tenant of the owners, paying a specific rent therefor. Under this contract the plaintiff went into possession, and was still so in possession when the fire occurred. It is not contended

that the contract, when made, was valid otherwise than as a lease of the realty, or that Tew then had any right to make a contract for a conveyance of the infants' interests. It was not a contract which could be specifically enforced by the plaintiff, nor did the plaintiff acquire any legal or equitable title. When Tew afterwards obtained from the court a power to contract, and, upon his report, a power to convey, no new contract had in fact been made. The only contract, was the executory contract for the sale of the real and personal property, given May 29. Now, after this full authority had been given to Tew to convey, and before the conveyance was in fact made, all of the personal property and a valuable part of the real estate had been destroyed by fire. Mrs. Ross and Tew were then in no situation to perform their contract. The personal property had been destroyed. They could not, even if their contract had been valid, have compelled the plaintiff to take what was left and pay for the whole.

Hence the plaintiff was in no sense the owner of the property in question. He had no equities, no insurable interest, nothing at risk, and consequently suffered no loss. The estate of Ross by such loss acquired a right of action to recover the amount insured up to the value of the property destroyed.

It is undoubtedly true, as claimed by the defendants, that if the widow and heirs of Ross had contracted to sell and transfer the title to this property to the plaintiff, the loss would have been his, to the extent of the purchase money paid, and if the whole consideration had been paid the policy is at an end. But until the purchase money is fully paid, the insured still retains an interest in the policy, equivalent to the amount unpaid. (*Ætna Ins. Co.* v. *Tyler,* 16 *Wend.* 385.) It is clear, however, that this principle does not apply unless the defendant's claim is well founded; that the deed given in November, 1865, operates by relation back to the time when the contract of

sale was confirmed by the court. If it be true that a sale of infants' real estate is of the character of those judicial sales where the deed takes effect by relation from a date antecedent to its date, (*McLaren* v. *Hartford Ins. Co.* 1 *Seld.* 151; *Gates* v. *Smith*, 4 *Edw. Ch.* 702,) this case must form an exception, because by the contract between the parties it was not to take effect as as a contract of sale until the deed was executed and delivered. Up to that time, it was a lease of the property. Whatever the law may be in the absence of a contract, parties may control its operation by their contract. In this case it is provided that the deed shall not relate back, but shall take effect from its delivery only. Besides, there was no valid contract for the sale of the real estate, and hence there could be no relation to one. And again the personal property contracted to be sold had been wholly destroyed before any delivery under a sale, and as there was but one contract for both real and personal, the Ross estate, became unable to perform. (*Herring* v. *Hoppock*, 15 *N. Y. Rep.* 409. *Hasbrouck* v. *Lounsbury*, 26 *id.* 598.) The plaintiff was unwilling to perform by taking what was left and paying the price originally agreed upon. (*Smith* v. *McCluskey*, 45 *Barb.* 610.) A new contract was thereupon made, by which the plaintiff took what was left of the property and an assignment of the rights of action on policies of insurance in lieu of the real estate and personal property described in the contract of May 29, 1865. This was not the performance of the old, but the making and executing of a substituted contract. (*Tompkins* v. *Dudley*, 25 *N. Y. Rep.* 272. *Murray* v. *Richards*, 1 *Wend.* 58.)

If I am so far correct in my reasoning, there can be no principle of subrogation applicable to this case in the interest of the defendants. It also follows that the plaintiff, as assignee of this policy, is entitled to recover the amount of the policy, provided the value of all the property destroyed equals or exceeds the amount insured

thereon. The amount of the purchase money expressed in the contract is not conclusive of value. That subject was fairly submitted to the jury, and their verdict is conclusive thereon.

The conclusion I have reached results in the refusal of the defendant's motion for a new trial, with costs, and an order for judgment in favor of the plaintiff upon the verdict, with costs.

All the justices concurring, judgment accordingly.

[BROOME GENERAL TERM, November 17, 1868. *Balcom, P. J.* and *Boardman, Parker* and *Murray,* Justices.]