AULTMAN, MILLER & CO. *v.* HACKER.

*(Supreme Court, General Term, Fifth Department. June 2, 1891.)*

SALE—ACTION FOR PRICE—FAILURE OF CONSIDERATION.

In an action for the price of a reaper, the answer alleged that defendant was unable to read English, which was well known to plaintiff's agent who made the sale; that the agent made certain representations as to the machine, on which defendant relied; and that there was, unknown to defendant, a writing on the back of the contract of sale containing a warranty and agreement, which was not read to defendant. There was no allegation of fraud, and defendant's testimony showed that he was acquainted with the contents of the writing. *Held,* that a verdict for defendant could not be sustained.

Appeal from circuit court, Erie county.

Action by Aultman, Miller & Co. against Frederick Hacker. From a judgment entered on a verdict in favor of defendant, and from an order denying plaintiff's motion for a new trial made on the minutes of the court, plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*John J. Snell,* for appellant. *Abram Bartholomew,* for respondent.

MACOMBER, J. It was decided at the trial, on motion of plaintiff's counsel, and with consent of counsel for the defendant, that the affirmative of the issue, under the pleadings, was with the defendant, and that consequently the plaintiff had nothing to prove at the outset to maintain its case. It was the duty, therefore, of the defendant to show affirmatively some defense which was set up to defeat an admitted cause of action, as stated in the complaint. The action is upon a contract to recover the purchase price of a combined reaper and binder, known as the "Buckeye Light Banner Binder." The contract, as set forth in the complaint, is as follows:  "JULY 16, 1889.

"I hereby order of Aultman, Miller & Co., through their agent, Henry Kihm, one of their Buckeye Light Banner Binders, to be shipped to Orchard Park, on or before July 20, 1889, for which I agree to pay the sum of one hundred and thirty-five dollars, and in manner as follows: $45.00, September 1st, 1889; $45.00, September 1st, 1890; $45.00, September 1st, 1891. Cr., one Walter A. Wood reaper, $15.00,—with interest on any sum remaining unpaid on the 1st day of September, 1889; and agree to make payment and settlement as above stated, giving notes for deferred payments upon delivery of the machine. The warranty and agreement hereon indorsed are hereby made a part of this order.

  [Signed]          "FREDERICK HACKER."

The "Warranty and Agreement," so called, which was indorsed upon and made a part of the above contract is as follows:

## "WARRANTY AND AGREEMENT.

"The Buckeye machine, for which the within order is given, is warranted to be well made, of good material, and, if properly managed, to do good work. The purchaser shall have one day in the harvest field to give it a fair trial, and agrees to see that the machine is properly managed. In case the machine does not do good work, the purchaser is to give written notice, both to the agent from whom he received the machine and to Aultman, Miller & Co., Akron, Ohio, stating wherein it fails, and shall allow reasonable time to get to it and remedy the defects, if any; and the purchaser shall render necessary and friendly assistance to the person sent to look after the machine, and furnish a suitable team for making further test of the machine; and, if it cannot be made to do good work, he shall return it to the place where he received it, free of charge, in as good condition as when received, excepting natural wear; and a new machine will be given in its place, or the money will be refunded. Continued possession of the machine, or failure to give notice as above, shall be conclusive evidence that the machine fills the warranty, and no one has any authority to change this warranty in any manner whatever.

  [Signed]         "AULTMAN, MILLER & Co."

The answer, after putting in issue the corporate character of the plaintiff, besides a general denial of all the allegations in the complaint not admitted, is, in substance, that the defendant, at the time mentioned in the complaint, was a German, and wholly unable to read and write the English language, which fact was well known to the plaintiff's agent Kihm at the time of the execution of the agreement; that Kihm stated to the defendant that the agreement contained nothing but an order for a machine at the price of $135, and the terms of payment of the same as set forth in the complaint; "that said Kihm represented and warranted said machine to be perfect in all respects,

and that it should do good and perfect work in all sorts of grain; that, if it did not do good and perfect work after testing the same, said defendant need not take or accept of said machine, and said order should be a nullity; that said defendant, relying upon the representations of said Kihm as to what said paper should and did contain, signed the same." It then avers that the writing on the back of the order, which is headed "Warranty and Agreement," was not read over, or the contents thereof stated, to the defendant, and that the defendant did not know that the paper which he signed had any such clause in it.

Before considering the ultimate question in the case, it should be stated that there was evidence given at the trial from which a jury would be warranted in finding, as a matter of fact, that the particular machine which was delivered in pursuance of the foregoing order was not, by reason of an imperfect adjustment of its parts, sufficient properly to cut and bind both light and heavy grain; so that, if the case depended upon the evidence relating to this matter, we should unhesitatingly say that a clear preponderance of the testimony was in favor of the contention made by the defendant. Before any evidence was given, the plaintiff's counsel made a motion that the court direct a verdict for the plaintiff for the recovery demanded in the complaint, upon the ground that, inasmuch as the contract set forth in the complaint was admittedly in writing, the answer contained no defense thereto, as there was no allegation in it of fraud, deception, or imposition practiced by the plaintiff or its agents upon the defendant. This motion was denied, and an exception was taken. When the evidence relating to the matters hereinafter stated was offered, the same objection was renewed, and the same ruling was made. The defendant was then permitted to give testimony in his own behalf to the following effect: That he signed the order before seeing the machine. "They told me that it was the best binder, and then this other agent,—I don't know whether he was agent or not,—he read this paper. He wants me to sign it, and then I told him I wouldn't sign no contract,—such a thing. Then they commenced, both of them,—Henry Kihm,—both of them said it was no contract at all; it was just an order; that they could order the machine for the company, ‘and then we get more chance to sell the machine around in your neighborhood, and, if the machine is not so as we tell you, we take it back any time.’ The machine would do all kinds,—all the work; make no mistake in binding; bind all kind of grain, heavy or light. Then when I signed this paper they gave this paper to Mr. Schroeder, I was working for. One of them men gave it to him. I don't know whether it was Kihm or the other one. I guess it was the other one. I told him I wanted to see my son first. The one that gave it to Schroeder to see what he said about this. They gave it to Schroeder to hold till I saw my son. Schroeder was to hold the paper till I could see my son. * * * *Question.* Did Mr. Kihm or this other man read this paper to you? *Answer.* He writes it. He did not read it right off. He didn't read it to me; just the payments he read to me. He asked me how long a time I wanted to pay him. ‘I take all the time I can get.’ He says, ‘We put it in three years, and divide it in three years to pay.’ That is all he read to me. I did not read over the paper. I could not read it. I cannot read English. I cannot read or write any other English. I did not know what there was in the paper that I signed." On cross-examination, the defendant said he was 58 years of age, and had lived in this county 28 years. The son referred to in the foregoing testimony was 28 years of age at this time, and had been sent to the district school of the county from 7 to 14 years, according to the testimony of the defendant. The defendant also testified that Schroeder spoke English and German; that after he had signed the paper it was left in the hands of Schroeder; and that after consulting his son he did, three days after, direct Schroeder to deliver it to the plaintiff's agent, which was accordingly done. On cross-examination the defendant further

said: "Then they told me, in addition to that, that that warranted it. They told me they warranted the machine to do all good work, and if they didn't do the work I should fetch it right back. They didn't say that in case it didn't do good work I was to let them know. They didn't tell me to let them know." The witness Schroeder testified that he was present at the negotiations between Kihm and the defendant, and that the defendant told Kihm that he would not sign his name to the paper, because if he did he would have to keep the machine whether it worked or not. "Hacker said they wouldn't do that when I sign the name, then I have to keep the machine. No, sir; the other agent told him that had nothing to do with that, only it was an order so that they could order a machine on the same place, and try the machine on the same place. Then, as Hacker wouldn't sign the name, Kihm said that had nothing to do with it; that was only so they could try the machine; and Hacker signs his name on that paper, and the agent hands that paper to me, to keep that paper in the house so long until Hacker could talk with the boy. The agent handed me the paper, and told me to keep it till Hacker could see his boy. I could not read it. He did not read the paper in my presence. The agent asked him if he could read it, and he told him that he couldn't read it. He had no glasses along, and he couldn't read much English. The other man asked him that. There was nothing more said there at that time. That is all I heard."

All of this testimony was, as it seems to us, incompetent and inadmissible under the answer. There was no denial in the answer that the last clause of the order signed by the defendant, which is as follows: "The warranty and agreement hereon indorsed are hereby made a part of this order," —was not read over and understood by the defendant. The testimony of both the defendant and his friend Schroeder shows, with reasonable certainty, that the indorsement on the back of this order, which is called a "Warranty and Agreement," was also read over; because in one part or another of their testimony all of the material portions of such writing are, in substance, given, with the exception of the clause that, in case there was a return of the machine for defective operation, the plaintiff should have the option either of refunding the money or giving a new machine in place of the former one, and the provision for a written notice. It is a familiar rule that a contract made in writing, whether the law requires it to be written or not, supersedes all oral negotiations or stipulations concerning the subject-matter of the contract which preceded or accompanied the execution of the instrument. *Lamatt* v. *Insurance Co.*, 17 N. Y. 199, note, and cases there referred to. The exceptions to the foregoing general rule, and under which, when established by evidence, a written contract may be defeated, may be placed under the following heads: Where the instrument is procured by the plaintiff, or in his behalf, through (1) mistake, (2) menace, (3) duress, (4) undue influence, (5) fraud, including all forms of deceit. The case clearly does not fall within any of the first four of these exceptions. Does it come under the head of fraud? We think not. No fraud is shown without the existence of which the contract in question would not have been executed. There is no evidence of any deceit practiced by the defendant or its agents upon the defendant. On the contrary, with the exception as stated above, the recollection of the defendant and his principal witness is such as to enable them to state orally, at the trial, the substance of the whole agreement. Had the consent of the defendant to this been procured by any suppression or trick, or other means, by which his name was procured to the paper, a defense would be made out. But there is no evidence of this character. The whole of the evidence, taken together, fully disproves such a statement made on the part of the defendant. But, if such evidence existed, it was incumbent, in order to make the same admissible, that such fraud be actually pleaded in the answer. The answer, however, contains no allegation that the defendant was, by any act

·of the plaintiff or its agents, deceived into signing a paper which he did not intend to sign. The allegation that the defendant could not read English, ·and that he did not know the contents of the writing on the back of the order, is, in the absence of proof that the final clause of the order itself, above quoted, was not read to him, of no avail whatever in the defense of this action.

We are not concerned here with the reasonableness of the terms of this ·agreement. It may indeed be true, as the learned justice at the circuit charged the jury, that under the written contract, taken together, there could be no pretense that any facts existed constituting a defense thereto, provided the ·defendant entered into the same understandingly. The court charged the jury as follows: "If Kihm, the agent of the plaintiff, when he went to Schroe-·der's, and had this conversation with the defendant, which resulted in the signing of this paper, if he represented to Hacker, the defendant, that this paper contained nothing but a simple order for the machine, that it was not ·a contract, that it was only a paper necessary for them to have in order to enable them to get this machine, that he was not required to keep it because he had signed it, then this paper has nothing to do with this contract, except so ·far as the terms of the contract, if he concluded to keep the machine, are concerned; that is, the terms of the payment and the price. The defendant would not be bound by this printing upon the back of this paper which is called a ‘Warranty and Agreement.’ He would be under no obligation to square his ·conduct in accordance with the terms of that particular agreement. But he would have a right, in dealing with this machine and these parties, to rely upon their oral agreement, and upon the agreement which they made there at ·the time by word of mouth." This portion of the charge was excepted to by ·counsel for the plaintiff. The learned judge also charged as follows: "This paper may be safely left out of this case, and then the contract depends en-·tirely upon what was said between the parties at that time, and upon that ·question there seems to be no dispute at all,—no dispute. * * * Now, in view of this evidence, if it is true this paper is out of the case, and this case must then turn upon the verbal agreement, then there is but a single other ·question in the case, and that is whether the machine did perform in such a way as to justify the defendant, under the agreement, in returning it to Kihm." This portion of the charge does not seem to have been excepted to, and would not, therefore, afford any proper ground for reversal, particularly as, later on, ·the question whether the defendant signed the paper understandingly, and without any misrepresentation on the part of Kihm, but after it had been read ·to him, or after the contents had been disclosed to him, was submitted to the jury. But, as has already in substance been stated, the denials and defenses ·contained in the answer are insufficient to support the evidence of an actual fraud or deceit practiced by Kihm upon the defendant in the sale of this machine. The defendant having, at the outset of the trial, acceded to the prop-·ositions of plaintiff's counsel in respect to the affirmative of the issue, was left, under the answer, without a defense. It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs ·to abide the event.