BRYANT *vs.* THE POUGHKEEPSIE MUTUAL FIRE INSURANCE COMPANY.

Where a party was insured against loss by fire, "on his stock in trade, as a manufacturer of brass clock works," *it was held* that this was a license to him to use all such articles as are ordinarily employed in that manufacture, and to keep them on hand, and even to make them for that purpose, if it was the ordinary course of that trade to make them; although the use or keeping of such articles was prohibited by the printed conditions of the policy, as being extra hazardous.

The written license controls the printed words, in such a case.

APPEAL by the defendants from a judgment entered at a special term. The action was upon a policy of insurance, by which the defendants insured the plaintiff against loss or damage by fire, to the amount of $1000, " on his stock in trade as a manufacturer of brass clock works," contained in the fourth story of the brick building situate No. 43 and 45 Duane street, city of New York. The defense was that, in the classes of hazards attached to, and forming a part of said policy, it was understood, among other things, that saltpetre, spirit gas, and all other combustible and explosive fluids and materials were expressly prohibited from being deposited, stored, used or kept in the building containing the goods insured, unless by the special consent of the defendants, or their agent, in writing, indorsed on the policy. And the defendants alleged that the plaintiff accepted the policy with such understanding, but that,

Bryant *v.* Poughkeepsie Mutual Fire Insurance Co.

in violation thereof, he deposited, stored, used or kept, saltpetre, oil of vitriol, alcohol, turpentine and other combustible and explosive fluids and materials in the said building, without the consent of the defendants. And the defendants insisted that in consequence thereof the policy was null and void. On the trial, the defendants produced and read in evidence a written examination of the plaintiff, taken at the instance of the insurers, soon after the loss, and sworn to by him, in which, among other things, he testified as follows:

"I manufactured brass machinery, wheels, movements; I used acid, dipping acid, nitrous acid I think, a portion of it *oil of vitriol,* nitrous acid and *salt petre;* I used lacker, which I manufactured myself, made of gum shelac and alcohol; I used about 20 to 30 gallons of lacker a year; I used the dipping acid on the platform in rear, adjoining my premises; the other articles I used in my building; I used a common charcoal furnace on bricks for drying the works after lacquered; I used a little *turpentine* for cleaning my works; 6 or 8 gallons a year; I used this in my building; 3 gallons of turpentine in the wing that did not burn, the fire did not get to it; of dipping fluid I used in the course of a year 6 or 8 carboys, holding on an average 6 gallons a piece; I used of saltpetre, 20 lbs. or more a year; I bought from 1 to 10 lbs. at a time; I generally bought it at wholesale." The plaintiff then called Edward C. Remer as a witness, who testified that he was in the employ of the plaintiff at the time of the fire, and previously. The plaintiff's business was manufacturing brass clock works. The plaintiff, at the time of the fire, occupied the 4th story of the buildings 43 and 45 Duane street, and had occupied the same premises in the same way for full three years before the fire. That lacker was used by the plaintiff to make a finish to the manufactured article, in preparing it for market, *and turpentine was used in cleaning the brass works, to take off the oil. Lacker and turpentine are used in that business.* To the admission of which testimony the defendants by their counsel objected. The court decided that the testimony was properly admissible; to which decision the defendants excepted.

John Gibbs testified that he had been a worker in brass for twenty-five years, and was in the employ of the plaintiff when the fire occurred. "I am familiar with the business of manufacturing brass clock works; dipping acid is necessarily used in manufacturing brass clock works; they cannot be got to market without it; they cannot be made without it. It is composed of nitric, muriatic and sulphuric acid; saltpetre is sometimes used as one of the component parts of dipping acid, by some artizans; lacker is also necessarily made use of in the manufacture of brass clock works; *turpentine is also necessarily used in that business; it is used in cleaning the brass clock works.*" To the admission of which testimony the defendants objected. The court decided that the testimony was properly admissible; to which decision the defendants excepted. The witness further testified, on cross-examination, that saltpetre was used as a component part of dipping acid; "it cannot be made without it; lacker must be used, to keep the brass works from rusting; it is the only thing made use of for that purpose in that business; if the brass works were regilded they would not rust; but common clocks, such as the plaintiff made, are never gilt; some costly French clocks may be gilt, but others are not; you could not turn out a clock fit for market without lacker; possibly other things could be used in the place of turpentine to take off the oil, but not as well; rotten stone and oil would not take the place of turpentine. Alkali would rust the iron; it would also stain the brass. The plaintiff's premises were used in the same way, at the date of the policy, and for at least 3 years before that, as at the time of the fire. It is not customary in that business to gild such clock works as the plaintiff makes."

The testimony being closed, the counsel for the defendants desired the court to charge the jury that as the plaintiff had saltpetre and spirits of turpentine on the premises containing the property insured, at the time of the fire, contrary to the policy and the conditions thereof, (and which was proved not to be necessary to the prosecution of the plaintiff's business,) the policy for that reason was void, and that the plaintiff was not entitled

Bryant *v.* Poughkeepsie Mutual Fire Insurance Co.

to a verdict against the defendants. But the court refused so to charge the jury, to which refusal the defendants excepted. The judge left it to the jury as a question of fact, which they were to decide, upon the evidence adduced by the respective parties, whether the plaintiff had deposited, stored, used or kept on the premises containing the insured property, saltpetre or any other combustible and explosive fluids and materials, in violation of the spirit and meaning of the policy issued to him by the defendants, and the conditions annexed to it. That in deciding that question, the jury were to look at the policy and the conditions together. If the jury should find that the plaintiff had done so, they would find a verdict for the defendants, otherwise they would find for the plaintiff. The jury thereupon rendered their verdict in favor of the plaintiff, for the sum of $1,046.64.

*L. Maison,* for the appellants.

*C. P. Kirkland,* for the plaintiff.

*By the Court,* MITCHELL, P. J. The defendants insured the plaintiff as a manufacturer of brass clock works. This was a license to him to use all such articles as are ordinarily employed in that manufacture, and to keep them on hand, and even to make them for that purpose, if it be the ordinary course of that trade to make them; although the use or keeping of such articles be prohibited by the printed terms of the policy as extra hazardous. The written license controls the printed words. (*See Wall* v. *Howard Ins. Co.,* 14 *Barb.* 383, *affirmed in court of appeals, Dec.* 1854.)

The proof showed that in the ordinary course of this business oil of vitriol, lacker, turpentine, saltpetre and dipping acid were necessarily used.

The motion for a new trial is denied, with costs.

[NEW YORK GENERAL TERM, November 5, 1855. *Mitchell, Clerke* and *Cowles,* Justices.]