## Case No. 7,182.

### JAMES v. LYCOMING INS. Co.

[4 Cliff. 272; [1] 4 Ins. Law J. 9.]

Circuit Court, D. Massachusetts. Oct. 6, 1874.

[1] [Reported by Samuel H. Hempstead, Esq.]

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

· Charles Allen, for plaintiff.

G. P. Shattuck and A. T. Sinclair, for defendant.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

CLIFFORD, Circuit Justice. Viewed in the light of the facts disclosed in his several propositions, it is contended by the plaintiff that he is entitled to recover the whole amount of the loss. Two principal questions arise in the case, as follows: 1. Whether the facts as agreed show that by the work done on the premises in taking out the old boiler and putting in a new one, and in building the brick chimney and fireplace, and in erecting the described structure for the purpose mentioned, and in using the steam-engine as auxiliary to the deficient water power, the policy was rendered null and void, irrespective of the condition denominated the builder's risk. 2. Whether the condition embodied in the policy, called the builder's risk, renders the policy null and void in view of the work done on the premises by the insured, and the means adopted by them to accomplish the same, as set forth in the annexed statement, unless permission is indorsed in writing on the policy for the purpose. The condition denominated "builder's risk" is that the working of carpenters, roofers, tinsmiths, gas-fitters, plumbers, or other mechanics, in building, altering, or repairing the premises named in the policy, will vitiate the same, except in dwelling-houses, where five days are allowed, without notice, in any one year, for incidental repairs.

Properly arranged, the several propositions mentioned show the following agreed facts, which are very material to be considered in deciding both of the questions presented for determination: that the boiler and chimney were cracked and in a dangerous condition; that the safety of the property insured required that both should be repaired or that new ones should be put in their place; that steam was used in the premises both for heating the same and for washing wool: that the quantity of steam was not increased by replacing the old, cracked boiler with a new one of sound construction; that the new structure erected to cover the new boiler, the fireplace, and the man who feeds the boiler, was reasonable, necessary, and proper for that purpose; that all the work had been completed several months before the fire occurred; that the work did not interrupt the use of the mill while it was being done, and that the fire was in no respect attributable to the change made in the premises, nor to the work that was done; and that the risk was not increased either by the change made or by the work done. Several other questions were discussed at the bar, but the opinion of the court will be limited to the two questions presented in the agreed statement of facts, without stopping to inquire what the decision of the court would be if the facts were different.

Repairs in this case became indispensably necessary to remedy defects in the premises and the machinery, which endangered the safety of the whole property insured; and the agreed facts show that the repairs made did not increase the risk, and they negative every possible ground of inference that the fire was, in any respect, attributable to the changes made in the premises or to the work that was done in executing the repairs; such an inference cannot be made, as the agreed statement expressly negatives any such theory, and shows that the work was completed several months before the fire occurred. Insurers know as well as the insured, that such a building and its operative machinery are liable to wear out or to get out of repair, and that it is for the interest of the insurer as well as of the insured, that defects which endanger the safety of the property insured, when discovered, should be repaired so as to remove the danger of loss.

Old fixtures and old machinery, under such circumstances, may be fully repaired; or if an old chimney or an old boiler has become so defective that good judgment and common prudence would dictate that one or both should be replaced with new, it is entirely competent for the insured to remedy the defects and remove the danger to the safety of the premises in that way; nor can it make any difference that the new boiler is a horizontal one instead of an upright one, nor that it is a few feet longer than the one in prior use, unless it appears that the change increases the risk or is more likely to occasion loss by the described perils. Attempt is made in argument to maintain that the structure erected to cover the projecting end of the new boiler, and the fireplace, and the man who feeds the boiler, is a greater change in the premises than the law of insurance will allow; but the agreed statement affords a complete and decisive answer to that suggestion, as it shows that the changes made did not increase the risk, and that the structure erected was reasonable,

necessary, and proper for the purpose. Unequivocal support to that view is found in the recent decisions of the courts in England, which show conclusively that the first defence set up by the underwriters cannot prevail. Stokes v. Cox, 1 Hurl. & N. 540.

Commenced as the suit in that case was, in the court of exchequer, it is necessary to refer to the original case in order to understand the full force of the decision in the appellate court. Same Case, 1 Hurl. & N. 320. Insurance was effected in that case on a range of buildings of three stories, all communicating, comprising offices, warehouses, curriers' shops, and drying-rooms, having a stock of oil and tallow deposited therein, a part of the lower story being used as a stable, coach-house, and boiler, and the policy contained the words, "no steam-engine employed on the premises, the steam from the boiler being used for heating water and warming the shops"; that the process of melting tallow by steam in the boiler-house, and the use of two pipe stoves in the building are hereby allowed, but it is warranted that no oil be boiled, nor any process of japanning leather be carried on therein nor in any building adjoining thereto.

Four kinds of insurances were described in the policy, to wit: common, hazardous, doubly hazardous, and special risks, and the policy stated that when insurances deemed special risks are proposed, the most particular specifications of the property and all the circumstances attending the same will be required, and that special risks must be particularized on the policy to render the same valid or in force. Certain conditions were indorsed on the policy, one of which provided that if, after the insurance shall have been effected, the risk shall be increased by any alteration of the materials composing the building, or by the erection of any stove, "coalkel," kiln, furnace, or the like, the introduction of any hazardous communication, or by any other alteration of circumstances, and the particulars of the same shall not be indorsed on the policy, and a proportionate higher premium paid if required, such insurance shall be of no force. After the policy was effected, which was for a special risk, the plaintiff, without notice to the defendants, erected in the stable the machinery of a steam-engine, which was supplied by steam from the boiler mentioned in the policy, but the jury found that the risk was in no way increased. Subsequently, the premises were destroyed by an accidental fire. Creswell, J., presided at the trial, and he directed a verdict for the plaintiff, reserving leave to the defendants to move to enter a nonsuit. Accordingly, the defendants obtained a rule nisi, and the parties were heard before the chief baron and two of his associates, when the rule was made absolute, one of the associate justices dissenting. Whereupon the original plaintiffs removed the cause by appeal into the exchequer chamber, and the parties were there fully heard, and the appellate court unanimously reversed the judgment rendered by the court of exchequer, and directed that a verdict be entered for the plaintiffs. Cockburn, C. J., gave the opinion of the appellate court that the insured in such a case was not bound to give notice to the insurance company of the alteration of circumstances, unless it appeared that the change made increased the risk, which was negatived by the finding of the jury. Exactly the same rule was applied by the court of exchequer, in a subsequent case, where they refer to the final decision in the former case with approbation; and that rule, it is believed, is universally adopted and applied by the courts of that country. Baxendale v. Harvey, 4 Hurl. & N. 444.

Suppose the rule is so when the facts are tested by the general law of insurance, still it is contended by the defendants that the evidence as to the work done in taking out the old boiler and putting in the new one, and in building the brick chimney and the fireplace, and in erecting the described structure to cover the projecting end of the boiler, and the fireplace, and to afford shelter to the attendant, and in using the steam as an auxiliary motive power, render the policy null and void as in violation of the condition denominated "builder's risk." Such a condition, however, must receive a reasonable construction in view of the agreed facts in the case, and that construction must be one not repugnant to the nature and purpose of the contract, nor one inconsistent with the due and customary use and enjoyment of the property. Parties, it is true, may make their own contracts, but courts of justice, in all cases except where the language employed is so explicit and unambiguous that it must be understood that the words speak their own interpretation, may give the language a reasonable construction to effect the intention of the parties as collected from the whole instrument, the subject-matter, and the surrounding circumstances. Of course, the province of construction is limited to the language employed, as applied to the subject-matter and the surrounding circumstances, contemporaneous with the instrument; but courts of justice are not denied the same light and information the parties enjoyed when the contract was executed, and for that purpose they may acquaint themselves with the persons and circumstances that are the subjects of the stipulations in the written instrument, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described. Shore v. Wilson, 9 Clark & F. 570; Clayton v. Gregson, 4 Nev. & Man. 602; Add. Cont. 846.

Most of the agreed facts are as material

in considering the present question as in considering the question just decided, of which the following are the most important: 1. That the risk was not increased either by the changes made in the premises or by the work done. 2. That the fire was in no respect attributable to the changes, or to the work, or the subsequent use of the property. 3. That the work was completed several months before the fire occurred. 4. That the repairs became indispensably necessary to render it safe to use the chimney and boiler, without which the mill could not be operated. 5. That the new boiler did not generate any more steam than the old one before it got out of repair. 6. That the structure erected to cover the projecting end of the new boiler, and the fireplace, and to afford shelter to the necessary attendant was reasonable, necessary, and proper for the purpose.

Facts agreed make a part of the case, and are as material in considering the second question presented for decision as the first; and in that view it necessarily follows that the authorities invoked to support the conclusion that the policy, under the general rules of insurance, is not rendered null and void by the changes made and work done by the insured subsequent to its date, are equally applicable in considering the second question presented for decision. Stokes v. Cox, 1 Hurl. & N. 540.

Mills and manufactories having mill, steam, or engine work were denominated in that case special risks in the policy, and the representation therein was that no steam-engine power was employed on the premises. Part of the lower story of one of the buildings was used as a stable, coach-house and boiler-house, and the boiler was used for heating water and warming the shops. Without notice to the defendants, the insured, subsequent to the date of the policy, created in the stable the machinery of a steam-engine which was supplied with steam by the boiler mentioned in the policy. Where the risk is increased by any alteration of the circumstances, the condition was that the policy shall be of no force unless the particulars of the same shall be indorsed on the policy, and, if required, a proportionate higher premium be paid. Afterwards the premises were destroyed by an accidental fire, not attributable to the erection or use of the steam-engine. Held in the exchequer chamber, reversing the court of exchequer, that the policy was not avoided by the introduction of the steam-engine and the use of the steam generated in the boiler to work it.

All that the insured, say the court, is called upon to do in such a case, is, in the event of an increase of the risk, and in that event only to give notice to the insurance company of the alteration of circumstances. Here it is found as a fact that there was no increase of risk; therefore there was no necessity to give notice. Two thirds of a year and more

elapsed, in the case before the court, from the commencement of the risk, before the fire occurred, which shows beyond all doubt that the policy attached, as it is not pretended that the case shows any breach of a condition precedent. Conditions subsequent, and even mere promissory conditions, may be of a character that the breach of one or more of them will render the policy null and void; but courts of justice are not inclined to give such a condition that effect unless it clearly appears that such was the intention of the parties as manifested by the language employed in the contract. Whether regarded as a condition subsequent or a mere promissory warranty, the condition in question, it is clear, is not one where a literal compliance with its terms is required. Such a construction would be absurd, as it would render the policy void if the insured employed a mechanic to take out a broken slate and put in a new one, or to replace a broken pane of glass, or to stop a leak in a chandelier or other gas fixture, or in a cistern, or to mend a defective chimney, stove-pipe, or furnace. Sudden defects of the kind often occur which endanger the premises, and the comfort, health and safety of the occupants; but if such is the true construction of the condition, the insured is prohibited from mending the slightest defect or removing the danger by the assistance of mechanics, unless he can apply to the insurance company and get their permission to do so, indorsed on the policy, no matter how urgent the necessity for repairs may be, nor how great the distance may be from the situs of the property insured to the place where the insurance company transact their business. Extreme conditions of the kind, even if they are not void as repugnant to the nature and purpose of the contract, and as inconsistent with the due and customary use and enjoyment of the property, must receive a reasonable construction unless they are expressed in such explicit and unambiguous terms as to amount to conditions precedent or to absolute and unqualified warranties. Warranties may be affirmative or promissory. Affirmative warranties may be express or implied, but they usually consist of positive representations in the policy of the existence of some fact or state of things at the time, or previous to the time, of the making of the policy; and they are, in general, conditions precedent, which, if untrue, whether material to the risk or not, the policy does not attach, as it is not the contract of the insurer. Newcastle Fire Ins. Co. v. Macmorran, 3 Dow, 262; Biccard v. Shepherd, 14 Moore, P. C. 475.

Promissory warranties may also be express or implied; but they usually, not always, have respect to the happening of some future event, or the performance of some future act, in which case they are usually held to be conditions subsequent, and subject to a reasonable construction to effect the intention of the parties as evidenced by the language

employed, the subject-matter, and the surrounding circumstances. Marsh. Ins. 346; 1 Arn. Ins. (2d Ed.) 580.

Stipulations of the kind must receive a reasonable construction; and the rule is that the intention of the parties, if it can be ascertained, is to govern; "and the intention," says Shaw, C. J., "is to be learned from the language used, construed in connection with every part and cause in the contract, the subject-matter respecting which the words are used, and the obvious purpose of each stipulation." Houghton v. Manufacturers' Mut. Fire Ins. Co., 8 Metc. [Mass.] 125; Aurora Fire Ins. Co. v. Eddy, 49 Ill. 106; 1 Pars. Mar. Ins. 423; Daniels v. Hudson R. Ins. Co., 12 Cush. 416; Hall v. People's Mut. Fire Ins. Co., 6 Gray, 185; Columbian Ins. Co. v. Lawrence, 2 Pet. [27 U. S.] 25; Ang. Ins. § 153; Gilliat v. Pawtucket Mut. Fire Ins. Co., 8 R. I. 292.

Beyond all doubt a warranty of an existing fact is a condition precedent; and if it be not true, when the stipulation is reasonably construed, it avoids the policy, whether it is material to the risk or immaterial, as the condition is a part of the contract which cannot be enforced unless it appears that the condition is fulfilled; but the insured, even in such a case, is only held to a substantial compliance, it being well-settled law that the condition cannot be extended by construction so as to include what is not necessarily implied in its terms. Turley v. North American Fire Ins. Co., 25 Wend. 374; Flanders, Fire Ins. 205.

Even words of warranty, unless they are so explicit and unambiguous as to speak their own meaning, are subject to construction, and will receive a strict or liberal construction to meet the justice of the case, as where there was a warranty that a certain cotton mill should be worked by day only, it was held that the warranty was not infringed, because it appeared that the engine and unconnected shafting were kept running all night as the mill and machinery were not substantially worked. Mayall v. Mitford, 6 Adol. & E. 670; Shaw v. Robberds, Id. 75; Whitehead v. Price, 2 Cromp. M. & R. 447; Buny. Ins. 65; 1 Phil. Ins. (4th Ed.) § 872.

Decided cases may be found in which courts have denied that there is any difference between an affirmative warranty and a promissory condition or stipulation; that the latter, as well as the former, must always be regarded as conditions precedent, on the literal truth or fulfillment of which the validity of the entire contract must depend; but it is evident that the rule, if it be one, which is not admitted, must be subject to many exceptions, as otherwise the greatest injustice would be done to the insured by the modern practice of crowding policies of insurance with stipulations imposing almost innumerable conditions, covenants, and agreements providing for a forfeiture of the indemnity, which were wholly unknown to such instruments until within a recent period, and which, it is to be feared, attract very little attention from the owner of the property insured, until they are set up by the insurer subsequent to the loss, to show that the losing party is not entitled to the indemnity for which the premium was paid. Borradaile v. Hunter, 5 Man. & G. 639; Alston v. Mechanics' Mut. Ins. Co. 4 Hill, 329.

Manifest injustice would be done in this case by holding that the condition in question is a condition precedent, as it would prohibit any repairs whatever which involved the necessity of employing a mechanic to work in the mill building. Justice to the defendants, however, makes it proper for the court to say that they do not contend for any such rule. They admit that small repairs may be made, but insist that the repairs made were greater than the law of insurance allows, where the policy contains such a condition as that exhibited in this case, which, of itself, is an admission that the particular condition must receive a reasonable construction not repugnant to the nature and purpose of the contract, nor inconsistent with the due and customary use and enjoyment of the property by the insured. Insurable property is intended for use, and it is not the intent of a policy of insurance to impair the right of use, nor to deprive the owner of the customary enjoyment of the property; and nothing of the kind should be inferred nor admitted, unless it be in obedience to a condition precedent, expressed in explicit and unambiguous terms to that effect. Mills and dwelling-houses almost constantly need repairs; and if they cannot be made, the property is liable to become untenantable, and unsafe and unfit for use; and in many cases, the property would be exposed to the danger of destruction by fire or flood. Owners of property must have the right to repair defects which render the property untenantable, or which expose it to the danger of destruction from fire or flood, else the inevitable effect of a policy of insurance would be, where defects of the kind happen or become known, to render the property comparatively valueless, and of course to deprive the owner of the due and customary use and enjoyment of the property.

Small repairs, such as taking out a broken slate and putting in a new one, or replacing a broken pane of glass, or stopping a leak in a chandelier or other gas fixture, or mending a leaky cistern, or repairing a defective chimney, stove-pipe, or furnace, it is properly conceded, may be made; but the effect of that concession is to admit that the condition in question is subject to a reasonable construction not repugnant to the nature and purpose of the contract, nor inconsistent with the due and customary use and enjoyment of the property. Necessary repairs of the house, whether small or great, could

not be made by the working of mechanics in the premises without avoiding the policy, if it be held that the condition under consideration applies in such cases, as the language of the condition, if taken literally, would forbid everything of the kind; but we are of the opinion that the condition, if construed to exclude all rights of making such repairs, would be void as repugnant to the nature and purpose of the contract as expressed both in the written and printed words of the policy. Stipulations of the kind, however, in a policy of insurance, may be held valid, if, by a reasonable construction, the objection to the literal operation of the instrument may be avoided, even though, if taken literally, they would be invalid. Authorities to support that proposition do not appear to be necessary, as the rule is well established that courts of justice, in the construction of all written instruments, will seek to uphold the instrument, if it can be done by a reasonable construction. Harper v. Albany Mut. Ins. Co., 17 N. Y. 198.

Apply that rule to the present case, and it follows, in the opinion of the court, that the condition in question does not prohibit the insured from remedying defects in the premises or machinery insured, which arose subsequently to the granting of the policy without his fault, or which were wholly unknown to him at that time, provided such defects were of a character to endanger the safety of the property insured, or to render the same untenantable and unsafe, and unfit to be occupied for the purposes and uses described in the policy, unless it appears that the repairs made were unreasonable and increased the risk, or that the fire was in some respect attributable to the repairs or to the work done in making the repairs. Viewed in the light of that proposition, it is clear that the second defence must also be overruled, as the agreed statement distinctly shows that the boiler and chimney were found to be cracked, and in a dangerous condition, so that it was necessary to repair or change them; and that there was no increase of the risk, and that the fire was in no way attributable to the changes made or to the work that was done. Sufficient has already been remarked to show that there was nothing unreasonable done in putting in a horizontal boiler in place of the upright one which was taken out, as the latter reached through the floor into the room above, evidently showing that it was more dangerous to the premises than the new one put in its place. Nor is it necessary to add any thing to show that no objection can be taken to the structure erected to cover the projecting end of the boiler, and the fireplace, and to afford shelter to the attendant, as the parties have agreed that it was reasonable, necessary, and proper for the purpose. When conditions in a contract impose burdens or disabilities on one of the parties, they are to be construed strictly against the party for whose benefit they are introduced. Catlin v. Springfield Fire Ins. Co. [Case No. 2,522]; Hoffman v. Aetna Fire Ins. Co., 32 N. Y. 414.

Where property is insured in contemplation of its use for a known and specified purpose, the contract imports, ex vi termini, a license to keep the articles, and employ the agencies incidental and essential to the beneficial enjoyment of the property for the use proposed; and many courts of high authority hold that a license of this nature, so implied from the language employed in the written portion of the policy, will not be overruled by a printed prohibition contained in some other portion of the same instrument. Harper v. Albany Mut. Ins. Co., 17 N. Y. 197; Bryant v. Poughkeepsie Mut. Ins. Co., Id. 201.

Decisions to that effect are quite numerous, and most of them are based upon the theory that an insurance upon a stock in trade used in a particular business, covers all such articles as are necessarily and ordinarily used in such business. 1 Phil. Ins. (4th Ed.) § 489; Delonguemare v. Tradesmen's Ins. Co., 2 Hall, 621.

Courts of justice agree that the intent of the parties is the primary rule of construction in ascertaining the meaning of a policy of insurance as well as interpreting other contracts, and that it is to be gathered, if possible, both from the written and printed portions of the policy, giving effect to both as far as may be; but they differ widely where certain conditions are found in the printed part of the policy, which are repugnant to the written words contained in the same instrument. None of them, however, support the proposition that a condition in the printed part of the policy, which is repugnant to the nature and purpose of the contract, and inconsistent with the due and customary use and enjoyment of the property insured, is a warranty of a condition precedent, which will avoid the policy, unless the condition is framed in such explicit and unambiguous terms as clearly to show that such was the intention of the parties. Instead of that they all support the opposite theory, that such a condition will not avoid the policy unless its terms are such that the condition, even when compared with every other part of the policy, is not susceptible of any other reasonable construction. Many courts hold that when there is a repugnancy in that behalf between the written and the printed portions of the policy, that the former shall prevail over the latter. Harper v. Albany Mut. Ins. Co., 17 N. Y. 198.

Express decision to that effect was made in the case of Harper v. Albany Mut. Ins. Co., 17 N. Y. 198, in which the opinion was given by the chief justice of the highest court in that state, where he said the plain meaning of the written part should prevail, and printed clauses, if repugnant, must yield,

or they must be construed so as to avoid a conflict of intention. Exactly the same rule has been laid down by the same court, in two other cases, in the first of which it is stated that when a policy of insurance is upon a building and a stock of goods such as is usually kept in country stores, it covers all articles of merchandise coming within such description, even though it include articles generally prohibited except at special rates. Pindar v. Kings Co. Ins. Co., 36 N. Y. 649; Steinbach v. La Fayette Fire Ins. Co., 54 N. Y. 95.

Insurance was granted to the plaintiff in the second case, "on his stock of fancy goods, toys, and other articles in his line of business," and "as a German jobber and importer," with the privilege "to keep firecrackers on sale." It was stipulated in the policy that if the premises should be used for keeping goods denominated specially hazardous, except as provided in the policy, the policy, so long as the store was so used, should be of no effect. Fire-works were in the class referred to, and it was stated in the policy that insurance thereon added fifty cents per one hundred dollars. Plaintiff kept fire-works, and by their accidental ignition the loss happened. Held, that if, as matter of fact, the keeping of fire-works was in the line of the plaintiff's business, they were embraced in the description of the property, and were covered by the policy. Different views are certainly expressed by the supreme court in the case of Steinbach v. Insurance Co., 13 Wall. [80 U. S.] 185; but it is unnecessary, in this case, to remark upon that difference, as it is obvious that the latter contains nothing inconsistent with the conclusion herein stated, that the stipulation in question is neither an affirmative warranty nor a condition precedent; and if neither, then the authorities are all one way that it is open to a reasonable construction. Decided support to the view that the stipulation is open to a reasonable construction is also derived from the following cases, to which many more might be added. Insurance was granted to the plaintiff upon his wagon-maker's shop. By the conditions of the policy the company were not to be liable for damages resulting from explosions caused by gunpowder, gas, or other explosive substances, or for damages occasioned by the use of camphene, spirit, gas, or burning-fluid, unless otherwise expressly provided. In the building insured was a shop containing paints and a half barrel of benzine, which caught fire and caused the burning of the property. Held, that though the paints and benzine, disconnected and by themselves, would belong to the class of articles excluded by the terms of the policy, yet, as it was proved that they were materials usual and customary in the manufacture of wagons, and were generally kept in the same shop where wagons were made, they were covered by the terms of the policy. Archer

v. Merchants' & Manufacturers' Ins. Co., 43 Mo. 439.

Where an insurance was effected on "groceries," and there was evidence that the insurer was informed that alcohol and spirituous liquors constituted a part of the stock, it was held that the question whether those articles were included in the term groceries was a question of fact for the jury; and that where a stock of goods was insured under the general description of groceries, which stock included some of these hazardous articles, the policy was not avoided, because the right to keep such articles was not indorsed in writing on the policy, as required by one of the conditions. Niagara Fire Ins. Co. v. De Graff, 12 Mich. 134.

Spirituous liquors were also classed as hazardous articles in the following case, in which the insurance was effected on a dwellinghouse, and the condition of the policy was that the building should not be used for the purpose of storing therein any of the articles denominated hazardous in the policy, and the defendants proved that a tenant used it as a boarding-house, and that she had a regular bar, where liquors were kept in open view and were sold by retail, and they insisted that the breach of the condition avoided the policy; but the court held that the keeping of liquors in the building insured for the purpose of consumption or for sale by retail to boarders and others, is not a storing within the meaning of the policy. Rafferty v. New Brunswick Fire Ins. Co., 18 N. J. Law, 482.

Substantially the same rule was applied in the following case, which was an insurance on a stock of goods and merchandise contained in plaintiff's store, one of the conditions being that the keeping of gunpowder for sale or on storage, upon or in the premises insured shall render the policy void. Leggett v. Aetna Ins. Co., 10 Rich. Law, 206.

Powder was always kept in the store for sale by retail both before and after the date of the policy, and the court held that the keeping and sale, in that way, of small quantities of powder, did not vitiate the policy, as it was part of the stock of goods insured. Cotton in bales, in the following case, was classed as a hazardous article, and one of the conditions of the policy was that, if the building should be used for keeping or storing goods denominated hazardous, then and from thenceforth, so long as the same shall be so used, the policy shall cease, and be of no effect. Moore v. Protection Ins. Co., 29 Me. 100. Bales of cotton were subsequently kept in the store for sale; but the court held that such a condition did not avoid the policy, it being intended merely to protect the insurer against the store being used as a depository of such goods as a sole or principal business. Phoenix Ins. Co. v. Taylor, 5 Minn. 492 (Gil. 393).

Direct support to the conclusion that the condition in question does not avoid the

policy in this case is found in the following case, in which the defence set up by the insurance company was based upon the exact same condition. Franklin Fire Ins. Co. v. Chicago Ice Co., 36 Md. 121. Insurance in that case was effected upon a large building used for storing ice, the policy containing the exact same condition as that under consideration. Instead of conforming to the terms of the condition, the president of the ice company testified that he always kept a crew of men, and a carpenter or two, about the building the year round, and that they were constantly making repairs, and in that way kept the building in a thorough condition. Based on that testimony, the defence was that the policy was avoided; but the court decided otherwise, holding that, by a fair and reasonable interpretation of the stipulation, it cannot be understood as referring to the casual patching up of the building; that it can only be understood as prohibiting such hazardous use as is generally denominated builder's risk, which arises from placing the building in the possession or under the control of workmen, for re-building, alteration, or repairs, and in support of that theory the court said that such a construction as that assumed, if applied, would defeat the intent of the parties, and would be repugnant to the written clause of the policy insuring the building, upon which, looking at its size, structure, and use, they must have reasonably contemplated the necessity for such repairs as the witness describes as indispensable to the proper conduct of the business. Such a building, so constructed, say the court, would necessarily be constantly liable to be injured and damaged by the use for which it was intended, rendering it indispensable for the prosecution of the business, that breakages should be repaired as they should occur, all of which was known to the insurers; and it must be presumed that the necessity for such repairs was in their contemplation at the time the contract was made, and that permission for that purpose was given by the written terms of the policy insuring the premises as an ice-house. Washington Fire Ins. Co. v. Davison, 30 Md. 107.

Text-writers usually adopt the rule laid down in the case of Robertson v. French, 4 East, 136, that where part of the contract is written and part printed, and there arises any reasonable doubt as to its meaning, the greater effect is to be attributed to the written words, inasmuch as the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning, whereas the printed words are a general formula adapted equally to the case in contest, and that of all other contracting parties in respect to similar subject-matters. 3 Kent, Comm. 260; 1 Arn. Ins. (2d Ed.) 79; 1 Phil. Ins. (4th Ed.) §§ 125, 883; Fland. Ins. 70; 2 Pars. Mar. Ins. (5th Ed.) 516; Ang. Ins. 12, 67; Smith, Merc. Law (3d Ed.) 419; Alsager v. St. Katherine's Dock Co., 14 Mees. & W. 797; Coster v. Phoenix Ins. Co. [Case No. 3,264]; Coit v. Commercial Ins. Co., 7 Johns. 390; Park, Ins. 4; 1 Duer, Ins. 64; Bryant v. Poughkeepsie Mut. Ins. Co., 21 Barb. 154; Cushman v. Northwestern Ins. Co., 34 Me. 495.

Adjudged cases, where insurance is granted upon property in contemplation of its use for a known and specified purpose, have decided that such a policy imports, ex vi termini, a license to keep the articles and employ the agencies incidental and essential to the beneficial enjoyment of the same for the use proposed; and many of those cases go further, and hold that a printed prohibition in some other portion of the instrument will not be allowed to prevail against such a license so implied from the language used in the written portion of the policy. Hayward v. Liverpool & London Life & Fire Ins. Co., 2 Abb. Dec. 351.

All of the adjudications upon the subject appear to sustain the first branch of the proposition there laid down, that such a policy implies a license to keep the articles and employ the agencies incidental to the due and customary use and enjoyment of the property; but the following cases, to wit: Lee v. Howard Fire Ins. Co., 3 Gray, 590; Macomber v. Howard Ins. Co., 7 Gray, 259; and Whitmarsh v. Charter Oak Ins. Co., 2 Allen, 582,—may perhaps be regarded as recognizing an exception to the latter branch of the proposition, where the written terms of the policy are repugnant to the provisions contained in the printed part of the policy, if the latter are clear, explicit, and unambiguous.

Support to that view is also derived from the case of Steinbach v. Insurance Co., 13 Wall. [80 U. S.] 183, and from the case of Portsmouth Ins. Co. v. Brinckley, 2 Ins. J., by Potter, 842; but the court here does not find it necessary to examine that subject, having come to the conclusion to rest the decision in the case upon the ground that the condition in question, when reasonably construed, does not prohibit ordinary repairs, nor such as become indispensably necessary to remedy defects on the premises, which endangered the safety of the property, and which occurred without the fault of the insured, provided it appears that neither the repairs made nor the work done in executing the repairs increased the risk, and that the fire was in no respect attributable to the repairs or the work that was done. Having come to that conclusion, it is unnecessary to decide whether the printed part of the policy is or is not overruled in case it is repugnant to the written part; as, when the whole instrument is properly construed, there is not any such necessary repugnancy in this case as is supposed. Such conditions prohibiting repairs which increase the risk, it is held by some courts, are operative only when

the increased risk is in existence, and that the policy becomes effectual as soon as the increased risk terminates. Schmidt v. Peoria M. & F. Ins. Co., 41 Ill. 298; Insurance Co. of North America v. McDowell, 50 Ill. 129; New England F. & M. Ins. Co. v. Wetmore, 32 Ill. 245.

Enough has already been remarked to show that the court here prefers to rest its decision upon a different ground, but it may not be amiss to add that the ground assumed in those cases would necessarily lead to the conclusion that the plaintiff is entitled to recover. Judgment for the plaintiff, as stipulated in the agreed statement, with costs.