GERMAN INS. CO. et al. v. HEARNE.

(Circuit Court of Appeals, Third Circuit. July 11, 1902.)

Nos. 24–32.

**1. INSURANCE—CONSTRUCTION OF CONDITIONS IN POLICY—WORKING OF MECHANICS.**

A clause of a fire insurance policy providing that it shall be void "if mechanics be employed in building, altering, or repairing the within described premises for more than 15 days at any one time," unless otherwise provided by agreement, is reasonable and valid, and must be given effect as limiting by agreement the alterations or repairs which may be made without special agreement with the insurer, and without avoiding the policy, to such as can be completed within 15 days, even though the work done is reasonably necessary for the ordinary repair and preservation of the property.

**2. SAME—REPAIRING—AVOIDANCE OF POLICY.**

Under such a clause, work done on an insured building in rubbing and polishing the woodwork, regilding light fixtures, reburnishing, plumbing, and repairing defects in the plastering and spouting, is "repairing," and its continuance for 24 days without notice to the insured, prior to the destruction of the building by fire, during which time 351 days' work had been done, rendered the policy void.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

George B. Gordon and Walter C. Rodman, for plaintiffs in error.

Willis F. McCook, for defendant in error.

Before GRAY, Circuit Judge, and BRADFORD and McPHERSON, District Judges.

J. B. McPHERSON, District Judge. Each of these writs of error raises the same question, and they may therefore be disposed of together. The evidence upon which the question arises was not disputed, and may be summarized as follows:

In December, 1900, Frank J Hearne, the plaintiff below, bought a large and handsome residence in the city of Pittsburgh. At the time he was living in a hotel in that city, and before he moved into the house that he had purchased, he desired to put it in thorough order, and to make some minor improvements therein. No structural change was contemplated, and none was made. A firm of contractors undertook to do whatever Mr. Hearne directed, and upon February 4, 1901, the work was begun. The kind and quantity of labor and material that was done and used does not seem to have been questioned at the trial. The total amount of the various bills was $2,712.04, and in this sum is included payment for 351 days of labor. The following quotation from the brief of counsel for the plaintiffs in error is no doubt substantially correct, and will indicate the kind and amount of work and material:

"The plasterers' bill for material and 164 days' labor amounted to $790; the carpenters' bill for material and 85 days' labor amounted to $474.79; the plumbing bill for material and 21½ days' labor amounted to $276.23; the

¶ 1. See Insurance, vol. 28, Cent. Dig. §§ 744, 745.

electricians' bill for material and 8 days' labor amounted to $45.48; the tinners' bill for material and 3 days' labor amounted to $37.30; the steam fitters' bill for material and 10 days' labor amounted to $98.57; the bricklayers' bill for 1 day's labor amounted to $5.55; the tile man's bill for material and 10 days' labor amounted to $95.50; the weather strip man's bill for material and 17½ days' labor amounted to $225,—and, in addition to this, there were about thirty days' wages of calciminers, and five painters for a part of a day, which went into the decorators' bill of $500 for materials and labor up to the time of the fire."

Early in the morning of February 28th, a fire broke out, and destroyed the house. It was insured for $50,000 in the companies that are now plaintiffs in error, and suits were brought upon the policies to recover for a total loss. Each policy contains the following provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if mechanics be employed in building, altering, or repairing the within described premises, for more than fifteen days at any one time."

No such agreement was otherwise made or waived, and the company defended under this provision, and, among other requests, asked the court to charge the jury as follows:

"(1) Under all the evidence and the pleadings, the verdict should be for the defendant.

"(2) The policy sued on in this case provides that if mechanics be employed in building, altering, or repairing the insured premises for more than fifteen days at any one time, the policy shall be void, unless otherwise provided by agreement indorsed or added to the policy. As it is the undisputed evidence in this case that there was no such agreement indorsed on the policy, and as it is further the undisputed evidence that mechanics were employed in altering or repairing the insured premises for more than fifteen days at one time, at and immediately prior to the fire, the verdict should be in favor of the defendant."

"(6) If the jury find from the evidence that mechanics were employed in altering or repairing the insured premises for more than fifteen successive working days at any time between the date of the policy and the date of the fire, there being no such agreement indorsed on or added to the policy, their verdict shall be in favor of the defendant."

The court refused these points, referring the jury to certain instructions contained in the general charge. The portion of the charge referred to by the learned trial judge is as follows:

"I am asked to charge you, as matter of law, that the work done by the mechanics and other persons employed in this building amounted to such altering or repairing of the building as violated the condition of the contract, and prevents recovery by the plaintiff. I decline so to instruct you under the evidence in the case. That evidence I submit to you, with the following instructions:

"The particular clause here relied on is not to be construed as preventing the owner of the premises insured from renovating the usual and ordinary effects of use and wear, and if the renovation is such as is customary and proper in a house of the kind and quality insured to preserve it, and keep it in fit condition for use, such work is not prohibited by the policy; in other words, the clause in question cannot be supposed to be intended to interdict the insured from the maintenance of his dwelling house in the condition in which it was when the policy was issued, and the preservation of it in such condition.

"If, then, what was done in the plaintiff's dwelling house did not involve any building or rebuilding, or any alteration of any part of the structure or

body of the house, and did not go beyond what was incidental to the ordinary repairing necessary for its preservation, there was no violation of that condition of the policy relied upon as avoiding it. It will be for you to determine from the evidence whether what was done in this instance went beyond such ordinary repairs for the preservation of the premises. If you find from the evidence that what was done did go beyond what I have just indicated, that would be a breach of the condition of the policy, and there can be no recovery. But if what was done did not go beyond what was required for the ordinary repair and preservation of the house, the plaintiff may recover. The question of fact, as to the character and extent of the work, is for the jury, under all the evidence."

The refusal of the points and these instructions are complained of by proper assignments of error, and present the question that is now to be considered.

The foregoing portion of the charge of the learned judge would no doubt have been correct in a suit brought upon an earlier form of the fire policy, which contained the unqualified provision that the contract should be void if mechanics were employed about the house in making alterations or repairs. When this provision made its appearance in policies of fire insurance, and suits were brought that required the courts to determine the scope of this language, serious objections were urged against construing it without qualification, and it was generally —perhaps everywhere—held that a reasonable construction must be put upon the clause,—a construction that would not be repugnant to the nature and purpose of the contract, or inconsistent with the proper protection that the policy was intended to afford. In one of the early cases upon this subject (James v. Insurance Co., 4 Cliff. 272, Fed. Cas. No. 7,182), Mr. Justice Clifford, in the course of an elaborate discussion, stated the reason for such a construction in the following language:

"Small repairs, such as taking out a broken slate and putting in a new one, or replacing a broken pane of glass, or stopping a leak in a chandelier or other gas fixture, or mending a leaky cistern, or repairing a defective chimney, stovepipe, or furnace, it is properly conceded, may be made; but the effect of that concession is to admit that the condition in question is subject to a reasonable construction, not repugnant to the nature and purpose of the contract, nor inconsistent with the due and customary use and enjoyment of the property. Necessary repairs of the house, whether small or great, could not be made by the working of mechanics in the premises without avoiding the policy if it be held that the condition under consideration applies in such cases, as the language of the condition, if taken literally, would forbid everything of the kind; but we are of the opinion that the condition, if construed to exclude all rights of making such repairs, would be void, as repugnant to the nature and purpose of the contract as expressed both in the written and printed words of the policy. Stipulations of the kind, however, in a policy of insurance, may be held valid, if, by a reasonable construction, the objection to the literal operation of the instrument may be avoided, even though, if taken literally, they would be invalid. Authorities to support that proposition do not appear to be necessary, as the rule is well established that courts of justice, in the construction of all written instruments, will seek to uphold the instrument, if it can be done by a reasonable construction. Harper v. Insurance Co., 17 N. Y. 198.

"Apply that rule to the present case, and it follows, in the opinion of the court, that the condition in question does not prohibit the insured from remedying defects in the premises or machinery insured which arose subsequently to the granting of the policy without his fault, or which were wholly unknown to him at that time, provided such defects were of a character to

endanger the safety of the property insured, or to render the same untenantable and unsafe, and unfit to be occupied for the purposes and uses described in the policy, unless it appears that the repairs made were unreasonable, and increased the risk, or that the fire was in some respect attributable to the repairs, or to the work done in making the repairs."

Other courts took the same view, and, so far as we are advised, this construction prevailed with little or no dissent. The following statement concerning the reason for inserting the provision in the policy, and for the restriction placed upon it by the courts, from May, Ins. (4th Ed.) § 240, is amply supported by the cases quoted in the note:

"Working of Carpenters—Repairs. Upon the same general principles, when, from the character of the building insured, and the use made of it, it is necessary to have workmen constantly engaged in repairing, in order to keep it in proper condition for the business done therein, the employment of such workmen is not a breach of the condition that 'working of carpenters,' &c., altering or repairing, will vitiate the policy. Such condition has for its object to prohibit such hazardous use as is generally denominated a 'builder's risk,' which arises from placing the building in the possession or under the control of workmen for alteration or repairs, but does not refer to such indispensable repairs as are necessary to the proper conduct of the business to which the building is appropriated."

It will be observed that the learned trial judge construed the clause contained in the policies now being considered as if it were identical with the clause construed by the foregoing cases, and it is this construction that is complained of as error. After careful examination, it seems to us that the complaint is well founded. In our opinion, the clause now before the court differs materially from the clause construed in the cases by which the charge of the trial judge was evidently directed, and requires a different construction to be placed upon it. The qualification imposed upon the earlier provision by Mr. Justice Clifford and by other judges resulted in this situation: Since reasonable repair was to be permitted,—such repair as was necessary properly to preserve the building in such condition as the policy found it, or to allow it to be used and enjoyed in a due and customary manner,—it was clear that in nearly every instance the question must be submitted to a jury whether what had been done to the building was reasonably necessary for the purposes mentioned, or whether it had exceeded that limit. As an inevitable consequence, disputes continually arose, and it became plain that the provision forbidding all repairs, thus construed to mean only repairs unreasonable in extent, was of little value in preventing controversies upon this branch of the contract. Accordingly, the clause now under consideration was substituted, with the evident purpose of getting rid of a fruitful source of friction and litigation. In effect, the companies said to the insured:

In order that there may be no room for question in the future concerning the character and extent of the work that may be done upon the insured premises, we agree that you may do whatever you please to the building, whether the change would be accurately described as building, or as altering, or as repairing, without asking our consent, and without being obliged to consider whether or not the risk is thereby increased; and you may do this for fifteen days. But if the work you do is so extensive that it requires more than fifteen days to finish it, then we require you to give us notice, in order that we may take

such steps as we may then see fit. We shall then have knowledge of what you are doing, and we can decide whether it may go on, or whether it is so dangerous as to require us to cancel the policy altogether, or to demand that the increase of hazard shall be compensated by an increase of premium.

This, we think, is the true meaning of the clause in question. It substitutes the much more certainly applied test of time for the test of reasonableness, and is a change in the contract that seems to us to be commendable, and worthy of support. There can rarely be room for a serious dispute concerning the length of time employed in doing a given work, while it is every day's experience and observation that there are frequently at least two conflicting standards of reasonableness. It seems to us, therefore, that the learned judge fell into error in supposing that the policies in question required him to ask the jury to determine whether the work done by the defendant in error was merely such work as was necessary for the ordinary repair and preservation of the property, or whether it exceeded this limit. To our minds, the meaning of the provision already quoted is plain and clear, as we have endeavored to explain; and it only remains to add that the work done by the mechanics employed for Mr. Hearne was certainly "repairing," even if it were neither "building" or "altering." The scope of the last two words need not now be determined. The character and extent of the changes are thus described in the brief of the counsel for the defendant in error, who may be trusted not to exaggerate the description:

"Not a brick, a stone, or a timber was added to or taken from the building. Neither the roof, walls, floors, partitions, or foundations were altered in any manner or added to. Nothing of the structure or frame of the building was disturbed, excepting that a small end of a board in one floor, provided for that purpose, was lifted by a plumber, to examine a pipe beneath it. The principal work done by the insured was the rubbing and polishing of the hardwood floors, stairway, wainscoting, and woodwork throughout, preparatory to renewing or freshening the finish. Cracks had appeared in a number of the walls and ceilings, which required to be filled up or cut out, and a ceiling was so badly cracked that it was deemed inadvisable to attempt to repair it, and it was replaced. This, of course, required the redecoration of those walls and ceilings, which work was contemplated, and the decorators had come to work with their materials, but had not commenced their work beyond some calcimining in the servants' quarter in the third floor. A bowl in one of the bathrooms was cracked, and replaced by a new one, and the exposed parts of the plumbing were being reburnished and renickeled, so as to freshen it, but no change was made in the plumbing system. The electric and gas chandeliers were tested, insulation renewed where required, and the chandeliers were reburnished, but no change was made in the electric wiring of the house, except to change the position of two small electric light brackets on the wall. The only alteration or addition made to the entire building was so insignificant as to be immaterial, namely, a small chair board, about 8 inches high, was put in the servants' rooms, the board being made and shaped outside of the building, and was simply put in its place in the room. A tinner examined the gutters and spouting of the building, and found leaks in some of the spouting, which was renewed with new spouting."

The charge of the court also contains an excellent summary of the changes, but it need not be quoted. It seems to us impossible to say that "repairing" does not accurately describe work of this character and extent, and indeed we do not understand the learned trial judge to

differ from us upon this point. He also held that this was "repairing," but believed it might be of such a character as to be permitted by the policy, even after the expiration of 15 days.

The clause under consideration is of comparatively recent date, and only a few cases have been found in which it has been examined by the courts of last resort. None of them decides the precise point raised by this writ of error, although we think that the reasoning of Newport Imp. Co. v. Home Ins. Co., 163 N. Y. 237, 57 N. E. 475, justifies us in citing that case as affording support to the conclusion we have reached.

The other question raised by the record need not be considered. For the reasons given, we think the undisputed evidence would have justified the circuit court in affirming the first point of the defendants below, by which binding instructions in their favor were asked, and it is therefore ordered that the judgment in each of these cases be reversed, without a new venire.