RICHARD GARREBRANT, DEFENDANT IN ERROR, v. CONTINENTAL INSURANCE COMPANY, PLAINTIFF IN ERROR.

Argued March 7, 1907—Decided June 17, 1907.

1. A fire insurance policy in the standard form is not made void by the use of a gasoline torch by a painter for the purpose of burning off paint from the building insured, where the work has continued for less than the fifteen days allowed by the policy for repairs.
2. Under an agreement for appraisal made pursuant to the terms of a standard fire insurance policy, one appraiser learned the opinion of the other as to the amount of loss and thought he would be unable to agree upon that amount, and subsequently conferred with the umpire with a view to agreement with him; later, upon the other appraiser expressing satisfaction with the umpire's figures, the first appraiser suspected collusion and withdrew from the appraisement. *Held*, that his conduct amounted to a submission of the matter to the umpire, his withdrawal came too late, and an award by the umpire and the other appraiser was binding.
3. An award made upon an agreement for appraisal under a standard fire insurance policy is not open to attack in an action at law for misconduct on the part of the umpire.

On error to the Supreme Court.

Action upon a policy of fire insurance of the standard form. The defences were that the policy was rendered void by the use of gasoline, and that no appraisement and award had been made as required by the policy. There was a verdict for the plaintiff for the full amount of the policy.

The fire seems to have been caused by the use of a gasoline torch by a painter, who had been employed to paint the building insured by the policy and to remove the old paint. He began work May 23d. The fire occurred the next day. After the fire the parties entered into an appraisal agreement in the terms of the policy. Fox was selected as appraiser by the plaintiff and Gibson by the defendant. The umpire, Runyon, was appointed by the court, in accordance with the statute.

At a meeting of the three a controversy arose which resulted in the withdrawal of Gibson. Thereafter an award was made by Fox and Runyon, by which the loss was fixed at a sum in excess of the total insurance. There was no other evidence of the loss. Gibson testified that Fox, when they were with Runyon at the burned building, said that the loss was the face of the policy, to which he replied: "I don't agree with that; I have not made up my figures yet; we will go down and figure the thing out and see how it comes out." Thereafter, he testifies, he agreed to take up the loss with Runyon and Fox, and they got a room at a hotel. He then testified as follows:

"I asked Mr. Fox if he had any figures; then I told him I would take it up in items, and I volunteered to take it up with Mr. Runyon, and I asked him if he had his figures, and he said he had; I said, 'Let me see what kind of a claim you have; I have no prices; let me see how these items come out;' Mr. Fox objected to my having this paper, but I told Runyon, and he volunteered in handing me his book; I took it; Mr. Fox in the meantime had looked over and seen the sum of the sound value of Runyon's figures, and he says, 'Well, there is no use; I am satisfied to take your figures; your figures we will stand by;' I said, 'Hold up; I have something to say about this matter; if I am a party to this appraisal I want something to show to the companies what they are paying for; they expect me to do that;' and I took up two items with Mr. Runyon, and Fox said, 'There is no use bothering with this,' and he said, 'You and I will sign it,' and I said, 'All right;' I said, 'Do you want to sign it, Mr. Runyon?' he says, 'No, I won't sign it;' I said, 'I think this thing is off; I resign from this appraisement,' and Mr. Gebhardt—they sent for him—he came up and said, 'Go ahead with it; proceed with it;' I said, 'No, I am done.' "

He also testified that on a prior occasion, the first day he met Fox, the latter told him the amount of the loss was more than the policy, and that he might then have said, "We never can agree." He was asked why he called in the services of

Runyon and conferred with the umpire, to which he replied: "I will tell you the reason why—because the umpire had been regularly appointed by the court, and it is just as I before stated; when I met him I made this statement to Mr. Runyon; I said, 'Mr. Fox is a farmer; he is a very good citizen and all that, but he is not a competent man to take hold of this thing and figure out the damage to the building, but,' I said, 'in order that you can understand this situation, if you afterwards come into this thing, I will take this list of items and we will go over and see if it is covered,' which we did, and agreed all was in, with the exception of two or three items and some doors that Mr. Garabrant called my attention to; of course, we put them all in." The trial judge charged the jury that even if they believed the burning of the paint increased the risk, yet the policy was not avoided if they believed that repainting was in reason required, and that in executing the work the removal of the old paint was reasonably required, and the method adopted for its removal was a reasonably safe and proper and a usual way to accomplish the work; that the naphtha (or gasoline) was used on the premises, but that the question was whether the use was so reasonable and usual in the execution of this kind of work that the contract of insurance must be regarded as executed in view of that fact; that the umpire became entitled to join in making and signing an award only in case the two appraisers disagreed as to the amount of the loss, and that if what Gibson said to Fox was that he would not consent to saying that the loss was up to the amount insured off-hand, but would make his estimate from the data which he had made, there was then no disagreement, but that if Gibson refused to agree with Fox that the loss was the face of the policy, the jury had a right to find that the two appraisers did disagree; that if Gibson resigned in good faith the award was invalid, but if his conduct in withdrawing was in bad faith, endeavoring to prevent the signing of the award and to postpone further consideration for some arbitrary purpose, then Fox and Runyon had the right to make the award.

For the plaintiff, defendant in error, *William C. Gebhardt.*

For the defendant, plaintiff in error, *E. A. & W. T. Day.*

The opinion of the court was delivered by

SWAYZE, J.   We think the case does not call for a decision of the question whether within the meaning of the policy the use of gasoline in the manner in which it was used increased the hazard, nor whether gasoline was kept, used or allowed on the premises in contravention of the policy.   Even if the contention of the defendant in these respects is correct, the policy is not avoided.   In construing a writing the whole must be construed together, and in view of the reasons which led to the use of the language employed.   The paragraph in the policy that contains the clauses above referred to provides also that the policy shall become void "if mechanics be employed in building, altering or repairing the within-described premises for more than fifteen days at any one time."   This can hardly be construed otherwise than as permitting mechanics to be employed for the specified time.   Prior to the adoption of the standard policy it had been held by several courts that ordinary repairs did not avoid the policy, even where the fire hazard was obviously increased.

In *Dobson* v. *Sotheby,* 1 *Moo. & M.* 90, the policy was issued at a low rate, payable for buildings wherein no fire was kept and no hazardous goods deposited.   The buildings required tarring.   A fire was lighted in the inside and a tar barrel brought into the building for the purpose of performing the necessary operations.   The tar, by reason of the negligence of the plaintiff's servant, took fire, and the premises were burnt.   Lord Tenterden said:   "The common repairs of a building necessarily require the introduction of fire upon the premises, and one of the great objects of insuring is security against the negligence of servants and workmen.   I cannot, therefore, be of opinion that the policy in this case was forfeited."   This decision was quoted with approval by the Supreme Court of New York, in *Grant* v. *Howard Insurance Co.,* 5 *Hill* 10.   The question was thoroughly discussed.

in a Maryland case, quoted at length in *May Ins.*, § 224; *Jolly* v. *Baltimore Equitable Society*, 1 *Har. & G.* 295, and by Justice Clifford in *James* v. *Lycoming Fire Insurance Co.*, 4 *Cliff.* 272; *Fed. Cas. No.* 7182. The effect of these decisions was to make it a jury question in each case whether the repairs were reasonable, and that regardless of the time taken. To meet this a clause was introduced in some policies expressly forbidding repairs without the consent of the company, and sometimes a limited time was allowed for repairs in each year. In 1874 the construction of such a clause came before the Court of Appeals of New York. *Rann* v. *Home Insurance Co.*, 59 *N. Y.* 387. In that case the policy allowed five days in each year for incidental repairs, without notice or endorsement. The assured had procured a special mechanics' risk for two months, which expired two weeks before the fire. After its expiration the assured began putting on new siding in place of the old, which had become decayed and dilapidated, and this work had been in progress less than five days when the fire occurred. It was held that putting on new siding came within the definition of incidental repairs, and the policy was not avoided.

Such was the state of the law in New York when the standard policy was prepared. It was prepared for use in that state. *Rich. Ins.* 133. We have no doubt the object of this clause was to define and limit the right of the insurer and the assured, and to do away with the uncertainty that had prevailed. This is the view expressed in a recent case in the Circuit Court of Appeals for this circuit (*German Insurance Co.* v. *Hearne*, 117 *Fed. Rep.* 289), and seems to be the view taken by the Court of Appeals of New York. *Newport Improvement Co.* v. *Home Insurance Co.*, 163 *N. Y.* 237; 57 *N. E. Rep.* 475. In Michigan the court has gone so far as to hold that the provision does not apply to painters, because they are not mechanics, and that the question of the reasonable time occupied in painting is still open, notwithstanding the limitation to fifteen days. The distinction between painters who are employed only to embellish and decorate and carpenters who are employed to construct does not seem to

us valid in view of the object of this clause of the standard policy to permit building, altering and repairing. These words seem sufficient to include such a betterment as repainting. It has never been supposed that in our statutory language mechanics' liens did not include liens for painting. If the word "mechanics" in the policy includes painters, as we think it does, the policy was not forfeited, for the repairs had been in progress only two days. If, however, the word "mechanics" does not include painters, the policy contains no provision limiting the right to repaint, and the question actually submitted was open for the jury under the authorities above cited.

The right to repair must include the right to make repairs in a reasonable, proper and usual way. The fact that the method used may involve an increase of risk is not a valid argument to the contrary, since increase of risk is involved in the very fact of repair, and, as Lord Tenterden said, common repairs necessarily require the introduction of fire upon the premises. By permitting repairs the company assumes the ordinary risk attendant if they are done in a usual and proper way. It contracts in view of the ordinary business methods. The words contained in another clause of the policy, "any usage or custom of trade or manufacture to the contrary notwithstanding," have no application to the clause permitting repairs. The clause in which they are found must be read as if an express exception of the right to repair for fifteen days had been inserted therein. In this way effect is given to all the words of the policy and to the intent of the parties. The same result has been reached in Michigan and Massachusetts. *Smith* v. *German Insurance Co.,* 107 *Mich.* 270; *First Congregational Church* v. *Holyoke Mutual Fire Insurance Co.,* 158 *Mass.* 475. In the latter case it was said that if the use of naphtha at the time and in the manner in which it was used was reasonable and proper in the repair of the building, having reference to the danger of fire as well as to other considerations, it would not render the policies void, and that the proper question for the jury was, "Was such a use of naphtha a reasonably safe

and proper way of making repairs on this building, under the circumstances?" This was the question submitted in the present case—we think rightly submitted.

With reference to the award, it was essential for the plaintiff to show that the award was made in compliance with the policy (*Wolff* v. *Insurance Company,* 21 *Vroom* 453), especially in this case, since unless the award is binding the plaintiff is without proof of the amount of his loss. The question submitted to the jury was whether the conduct of the company's appraiser in withdrawing was in bad faith, and the judge expressly said that the umpire could join in making and signing the award only in case the appraisers disagreed, and he called attention to the testimony as to their estimates of the loss. The effect of this charge, taken as a whole, is in accord with the rule adopted by this court in *Broadway Insurance Co.* v. *Doying,* 26 *Id.* 569. In that case, however, the appraisal agreement differed from the policy in failing to require that the appraisers should submit their differences to the umpire. It only provided that the award of any two of them in writing should be binding. In the present case the agreement requires that the appraisers shall estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire. In a proper case it would be a question for the jury whether the appraisers submitted their differences to the umpire as the agreement requires, but no request was made to put this question to the jury, nor was exception taken to what the court said upon the subject. Accepting Gibson's version of what occurred, which is the most favorable view for the defendant, we think both he and Fox did in fact submit the whole matter to the umpire—Fox because he was satisfied with the figures made by Runyon, Gibson because he thought that Fox was incompetent, and that he and Runyon could probably agree. He says he volunteered to take the matter up with Runyon, and he actually did so, apparently ignoring Fox. His attempted explanation that he took it up with Runyon in order that he might understand the situation if he afterward came into the thing does not account for

Gibson's conduct. The very fact that he conferred with Runyon brought the latter into the case, and amounted to a submission on Gibson's part, and Fox's subsequent expression of agreement with the umpire to a submission on his part. It was too late then for Gibson to withdraw. The suggestion that there was misconduct on the part of the umpire cannot be entertained in the present action, which is a suit at law. *Ruckman* v. *Ransom,* 6 *Id.* 565. The same principle has been recently applied by this court to an award under a policy of insurance. *Kaplan* v. *Niagara Fire Insurance Co.,* 44 *Id.* 780.

We find no error in the record, and the judgment is affirmed, with costs.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    14.

*For reversal*—None.